**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN DOE,**  )  | |
| )  | |
| **Plaintiff,**  )  | |
| )  | |
| **v.**  )  | **Case No. 18-cv-553 (RMC)** |
| )  | |
| **THE GEORGE WASHINGTON**  )  | |
| **UNIVERSITY,**  )  | |
| )  | |
| **Defendant.**  )  | |
| )  | |

**MEMORANDUM OPINION**

Undergraduate student John Doe was found to have committed sexual assault after the George Washington University (GW or the University) investigated a charge filed by student Jane Roe. The University conducted a hearing at which both parties were given the opportunity to present witnesses, found Mr. Doe responsible, and then denied his appeal. As a sanction, Mr. Doe was suspended from January 2018 until January 2019, which delays conferral of his degree even though he has completed all required coursework. Mr. Doe complains here that GW was biased in favor of Ms. Roe, that her claim that she was too intoxicated to consent to their sexual encounter was untrue and not credible, and that the hearing and appeal processes were arbitrary and capricious. Mr. Doe sues the University and alleges gender discrimination under Title IX of the Education Amendments of 1972 and the D.C. Human Rights Act, breach of contract and the implied covenant of good faith and fair dealing, and negligence.

Most immediately, Mr. Doe seeks a preliminary injunction to enjoin his suspension until this matter can be litigated to its conclusion. He explains that he has only until April 27, 2018 to assure a graduate program, from which he has received a provisional offer of

1

admission, that he will receive his diploma in May 2018, or else that school may withdraw its

acceptance. *See* Pl.'s Mot. for Prelim. Injunction (Mot. PI) [Dkt. 6]; Suppl. Decl. of John Doe

(Doe Suppl. Decl.) [Dkt. 24].  The matter is fully briefed and the Court heard oral argument.[1]

Because Mr. Doe has not demonstrated that he would suffer irreparable harm in the absence of a

preliminary injunction, a necessary predicate for injunctive relief, Mr. Doe's motion will be

denied.  To allow timely consideration of Mr. Doe's claims on the merits, the Court will convene

a prompt status conference to set a schedule for expedited discovery and briefing.

## I.       BACKGROUND

The events leading to Mr. Doe's lawsuit began on the night of September 12,

2015, when Mr. Doe was a sophomore.  Mr. Doe claims that he lost his virginity that night

during a consensual sexual encounter in his dorm room with Ms. Roe.  According to Mr. Doe, he

and Ms. Roe were at a party together when Ms. Roe verbally "asked if they could have sex in his

dorm room" and then called an Uber taxi to take them there, and, once in Mr. Doe's room,

initiated sexual contact.  Compl. [Dkt. 3] ¶¶ 6, 56-67.  Over two years later, on October 30, 2017,

Ms. Roe filed a charge with GW under Title IX of the Education Amendments Act of 1972 (Title

IX), 20 U.S.C. § 1681 *et seq.*, alleging that she was too intoxicated to have consented to the

sexual encounter and that Mr. Doe should have known it.  *See id.* ¶¶ 6, 68.  Ms. Doe asserted that

she passed out shortly after arriving at Mr. Doe's room; that she regained consciousness "on a

bed in the dorm, facedown while the respondent was penetrating" her; that she "verbalized a

'no'" which Mr. Doe ignored; and that she left shortly thereafter, stumbling out of the room,

partially falling down the stairs, and walking one block to her own residence.  *Id.* ¶¶ 71-72.

---

[1] *See* Def.'s Mem. in Opp'n to Mot. for Prelim. Injunction (Opp'n) [Dkt. 17]; Reply to Opp'n to
Mot. for Prelim. Injunction (Reply) [Dkt. 21]; 4/12/2018 Minute Entry for Proceedings (PI
Hearing).

GW initiated an investigation through which it conducted interviews and a hearing before a panel composed of a GW undergraduate student, a GW law student, and a GW administrator whose title is "Director of Greek Life."  *Id.* ¶ 102.  These proceedings were conducted pursuant to GW's Sexual Harassment and Sexual Violence Policy (the Policy) and its Code of Student Conduct (the Code).[2]  The record is not clear as to whether either Ms. Roe or Mr. Doe was represented by counsel during the investigation and proceedings, although each had an "advisor," for purposes of "advice and consultation," present during the hearing.  *See* Opp'n, Sealed Ex. A (Hearing Transcript) [Dkt. 18-2] at 5.

In her charge, supplemental submissions, and hearing testimony, Ms. Roe stated that she drank a large quantity of alcohol over the course of the night; before the hearing panel, she quantified her drinking to "over ten drinks" in two-and-one-half hours, much of it before she joined the party where she encountered Mr. Doe.  Mot. PI at 11.  Mr. Doe contests Ms. Roe's account of her alcohol consumption that night, and disputes the hearing panel's conclusion that Mr. Doe should have known that Ms. Roe was too intoxicated to consent to sex.  He emphasizes that Ms. Doe's account of what she drank, and when, became more specific in each statement between the time she filed her initial complaint and the time of her testimony at the hearing, which he argues suggests that her testimony was incorrect and at least should have raised questions about her credibility, *see id.*; he contends that it is almost physically impossible for Ms. Roe to have consumed as much liquor as her testimony suggested.  *See* Compl. ¶ 7.  Mr. Doe also argues that various other aspects of Ms. Roe's allegations were inconsistent.  *See, e.g.*, *id.* ¶ 82 ("And she again stated that she took the stairs.  This time, however, she added a detail that it

---

[2] Both documents are appended to GW's brief in opposition.  *See* Opp'n, Ex. E, Sexual Harassment and Sexual Violence (GW Policy) [Dkt. 17-6]; Opp'n, Ex. D, Code of Student Conduct (GW Code) [Dkt. 17-5].

is impossible to believe she only just remembered:  that she 'remember[s] falling down the stairs as [she] exited.'  She failed to explain how it was possible that she fell down only once in that state.").

In addition, Mr. Doe challenges the testimony of E.E., Ms. Roe's friend, who told the panel that she spoke with Ms. Roe during the Uber ride to the dorm and that Ms. Roe slurred her speech and sounded "extremely intoxicated, over the phone, and like barely conscious."  *Id.* ¶ 110; Opp'n at 29 (summarizing E.E.'s testimony before the panel); *see also* Mot. for Discovery Prior to Rule 26(f) Conference (Discovery Mot.) [Dkt. 9] (describing the value of E.E.'s testimony to the case against Mr. Doe).  Mr. Doe has no recollection of Ms. Roe having a phone conversation during the Uber ride, and argues here that E.E. fabricated the story to assist Ms. Roe.  *See* Discovery Mot.; Compl. ¶¶ 89-95.  Mr. Doe asserts without contradiction that he did not, and does not, drink for religious reasons.

Mr. Doe did not cross-examine E.E. at the hearing but he did contest her testimony when he spoke to the panel, including by raising his recollection that Ms. Roe had not spoken to E.E. on the phone during the Uber ride.  *See* Def.'s Mot. *in Limine* [Dkt. 23] at 4; Hearing Transcript at 65.  In this litigation, the Court allowed Mr. Doe to serve a third-party subpoena to obtain E.E.'s cellphone records for the relevant time frame, to determine whether a conversation took place at all.  As discussed below, those records do not show that E.E. made or received a telephone call during the relevant time period.  GW has filed a motion *in limine* to preclude introduction of E.E.'s cellphone records, arguing that because they were not before the hearing panel they are irrelevant to its processes or findings.  *See* Def.'s Mot. *in Limine*.

Based on the perceived weaknesses and inconsistences in the testimonies of Mses. Roe and E.E., and the alleged bias of the proceedings, Mr. Doe argues that it was unreasonable for the hearing panel to conclude that he was responsible for sexual assault.

Further, Mr. Doe alleges that GW exhibited gender bias against him and in favor of Ms. Roe, which resulted in unfair treatment by the hearing panel and by the administrator who denied his appeal.  He points to the panel's limiting his ability to cross-examine witnesses and to ask certain relevant questions, and he complains that the University's Title IX investigator is a woman whose professional background, and possibly current private practice, is in advocacy for victims of sexual assault, not in neutral evaluations of evidence.  Mr. Doe alleges that GW has faced "relentless pressure" since 2011—from the Department of Education's Office for Civil Rights (OCR) and from its own students—to respond more vigilantly to sexual assault claims. Compl. ¶¶ 8-9.  Mr. Doe also alleges that the University has publicly touted "its 100% conviction rate of respondents put through its formal sexual misconduct process, all of whom are believed to be male."  *Id.* ¶ 8; Mot. PI at 5.  He cites a "Message from University Administrators," that was available contemporaneously on a GW website, which stated:  "During the last two academic years (2015-16 and 2016-17 to date), 16 reported cases resulted in formal complaints, 10 went before a hearing board and are concluded.  Four of these [10] cases resulted in an expulsion, five resulted in a suspension, and one resulted in a deferred suspension."  Mot. PI, Ex. 7, GW Today, Message from University Administrators (Apr. 21, 2017) [Dkt. 6-8] at 3; *see also* https://gwtoday.gwu.edu/message-university-administrators (last visited Apr. 23, 2018).  From this message, Mr. Doe deduces a conviction rate of 10-for-10 of those who presented a defense to a hearing panel.

The University informed Mr. Doe on January 23, 2018 that he had been found responsible for sexually assaulting Ms. Roe and would be suspended for one year, after which time he would receive his degree. *See* Compl. ¶¶ 118-23 (describing the findings).  Mr. Doe filed an appeal as allowed by the Code and offered in support (1) an expert toxicology statement suggesting that Ms. Roe had to have exaggerated the amount of alcohol she had consumed on the night in question, and (2) a statement from another student who had spoken to Ms. Roe that night and found her to be "normal" and "lucid," and that she had kissed Mr. Doe in public at the party before they left together. *Id.* ¶¶ 124-27.  The appeal was rejected on the grounds that Mr. Doe "[had] not met the requirements for an appeal" under the Code, *id.* ¶ 130-31, *i.e.*, he had not presented relevant "'new information . . . that was not previously presented at the hearing.'" Mot. PI at 14 (quoting GW Code ¶ 33).

## II.     LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  *Winter* held that a "possibility" of irreparable harm, relied on in the lower courts in that case, was insufficient to satisfy the second prong, regardless of the strength of a plaintiff's showing on the other factors. *Id.* at 20-21.  "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

### III.     ANALYSIS

#### A.  *Motion for Preliminary Injunction*

##### 1.  **Likelihood of Success on the Merits**

###### a.  *Breach of Contract and Implied Covenant of Good Faith*

The relationship between GW and Mr. Doe, at least insofar as that relationship is governed by the University's Code and Policy, is contractual in nature and permits suit for its breach. *Chenari v. George Washington Univ.*, 847 F.3d 740, 744 (D.C. Cir. 2017) ("Under District of Columbia law, which governs here, the relationship between a university and its students is contractual in nature.") (citations omitted); *see also Alden v. Georgetown Univ.*, 734 A.2d 1103, 1111 n.11 (D.C. 1999); *Pride v. Howard Univ.*, 384 A.2d 31, 34 (D.C. 1978); *Basch v. George Washington Univ.*, 370 A.2d 1364, 1367 (D.C. 1977). While GW contests this relationship, both the D.C. Court of Appeals and the D.C. Circuit are clear on it. The Court finds that Mr. Doe's objections to the disciplinary hearing are insufficient to support a preliminary injunction but that he is likely to succeed on the merits of his claim that GW mishandled his appeal and thereby violated its contract.

Mr. Doe contends that the panel's conclusion that he was responsible for sexual assault violated the University Policy and Code and thereby breached the parties' contract and the covenant of good faith and fair dealing that is implied in every contract because these decisions were arbitrary, capricious, and without a reasoned basis. He argues that there was no credible evidence that Ms. Roe was actually so intoxicated that she was unable to consent, or, critically, that she appeared that way to Mr. Doe. He contends that the hearing panel ignored evidence that cast doubt on Ms. Roe's account, including inconsistencies in her testimony and that of E.E., and other witness testimony, and that the panel was biased toward a preconceived

conclusion.  GW counters that Mr. Doe has failed to show that the University departed from its policies in investigating and sanctioning Mr. Doe and that he had full opportunity to object to the allegedly contradictory evidence but failed to do so at the hearing.  It argues that the totality of the evidence presented to the hearing panel reasonably supports its conclusion that Ms. Roe's account was credible and that Mr. Doe was responsible, and that the panel explained its findings in writing.  The University flatly disputes the argument that Ms. Roe's testimony was self-contradictory, arguing that the record shows only that her recollections and testimony became more detailed as the investigation progressed.

Under the mandatory standards for a preliminary injunction, the Court agrees with the University that Mr. Doe has failed to demonstrate that he is likely to succeed on the merits that the investigation and hearing panel processes were so unreasonable that they constituted a breach of contract or the implied duty of good faith and fair dealing.  The processes required by the Policy and the Code were followed.  The panel heard from several witnesses whom it apparently credited and who testified that Ms. Roe had consumed large quantities of alcohol at a "pre-game" party and had appeared drunk shortly before her arrival at the party or during it.  The Court does not rule on this argument because the parties have yet to engage in discovery; it finds only that the evidence is insufficient to support a preliminary injunction.

Separately, Mr. Doe challenges the short shrift that GW gave to his appeal and its failure to consider his new evidence.  On this point the Court finds that he has demonstrated a likelihood of success on the merits.  The University's Code specifically provides that a student may appeal the result of a disciplinary proceeding if s/he presents "new information . . . that was not previously presented at the hearing."  GW Code ¶ 33.  On appeal from the hearing panel, Mr. Doe proffered an affidavit from another student (who had been out of the country at the time of

the hearing) stating that the student had spoken with Ms. Doe at the party and found her lucid and not appearing drunk.  Mr. Doe also proffered an expert report that opined that Ms. Roe would not have been able to stand up had she imbibed as much alcohol as her testimony indicated and suggested that her testimony about the amount she drank may have been inconsistent with her testimony about her memory of the sexual encounter.  *See generally* Mot. PI, Ex. 16 (Sealed Expert Report) [Dkt. 16-3].  Finally, with access to a subpoena during this litigation, Mr. Doe subpoenaed phone records that reveal that E.E. neither called nor received a phone call from Ms. Roe during the agreed-upon time period of the Uber taxi ride.  If the proffered evidence were found to undermine the credibility of Ms. Roe and E.E., a person reviewing the matter might indeed have had a basis to question whether Mr. Doe should have known that Ms. Roe was too drunk to consent.  Neither the expert report nor the affidavit from the student who had spoken with Ms. Roe was considered on appeal because the reviewer never considered the merits; obviously, the phone records could not be subpoenaed and were not available at that time.

GW argues that the denial of Mr. Doe's appeal was proper and did not breach any contract.  It maintains that both the expert report on Ms. Roe's state of intoxication and the student affidavit were not "new evidence" because the hearing panel could decide the question of drunkenness based on witness testimony and the additional witness affidavit could have been submitted at the hearing.  At oral argument, as it argued in its brief in opposition, GW explained that the term "new information" in the Code means only brand-new, previously unavailable evidence that could not have been presented at the hearing.  *See* Opp'n at 21 (characterizing the Code as requiring that "new information," for purposes of justifying an appeal, "*could* not have been previously submitted") (emphasis added).  This argument contradicts the facts and the plain

language of the Code.  Mr. Doe's expert report was based on information that Mr. Doe learned

only at the hearing, when Ms. Roe testified for the first time to the quantity of alcohol she had

consumed, and contained new information about alcohol toxicity that had not been "previously

presented at the hearing."  GW Code ¶ 33.  By any standard, this was "new information" that

could not have been presented *at* the hearing, since it was based on Ms. Roe's quantification of

her alcohol consumption *during* the hearing, as to which her prior statements were silent.  Thus,

while the hearing panel interpreted the testimony concerning Ms. Roe's alcohol consumption, the

expert's opinion might have affected the panel's evaluation of her testimony.  The expert opined

that had Ms. Roe consumed the amount of alcohol to which she testified she may have

experienced "substantial motor impairment, total memory loss," and other extremely serious

symptoms.  Sealed Expert Report at 9.  The fact that some testimony on the topic was presented

does not mean, as the University would have it, that contrary testimony was not "new" and was

unworthy of attention on appeal.

Equally important is that GW offers a strict lawyer's interpretation of the simple

language of the Code, reading into it the kind of limitation that a lawyer may have wanted to

include.  But "[t]he terms of the document are to be given their common meaning."  *Basch*, 370

A.2d at 1367.  The Code is intended to be read and understood by college students, who are

neither trained in the law nor fully mature.  It must be read as it is written.  The Code says that a

student appealing a panel decision may present "new information . . . that was not previously

presented at the hearing."  GW Code ¶ 33.  The University contends that the affidavit from the

student studying abroad about his conversation with Ms. Roe on the night of September 12, 2015

was not "new" on appeal because Mr. Doe could have contacted that student abroad and timely

submitted his affidavit to the hearing panel.  This argument appears to translate the plain

language of the Code ("new") to mean not-previously-known and totally unavailable.  The Court cannot agree to add limitations that are not stated in the Code.  To the contrary, "the court should review the language of the document as would a reasonable person in the position of the parties." *Pride*, 384 A.2d at 34 (quoting *Basch*, 370 A.2d at 1367).  The Court concludes that Mr. Doe is likely to succeed on the merits of his claim of breach of contract as to the handling of his appeal and its denial.

### b.  Liability Under Title IX

Mr. Doe has not sufficiently established a likelihood of success on the merits of any of his other claims.  As to his Title IX claim, Mr. Doe contends that the administrative proceedings were infected by gender bias against male students.  Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Courts in other circuits have recognized an "erroneous outcome" theory of Title IX liability, under which a student may prevail upon a showing that he was innocent and wrongfully found responsible of an offense due to gender bias.  *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994); *see also Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (recognizing Title IX defenses of "(1) erroneous outcome, (2) selective enforcement, (3) deliberate indifference, and (4) archaic assumptions") (internal punctuation and citations omitted); *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir. 2016).  To succeed, the plaintiff must show "particular facts sufficient to cast some articulable doubt on the outcome of the disciplinary proceeding" and circumstances showing "that gender bias was a *motivating factor* behind the erroneous finding."  *Yusuf*, 35 F.3d at 715 (emphasis added).

Mr. Doe presents facts and circumstances from which he contends that GW's processes were biased.  GW presents facts and circumstances which counter these allegations. The Court will not belabor all of the parties' arguments.  However, Mr. Doe emphasizes that OCR was actively investigating the University for its alleged failure to hold accountable perpetrators of sexual assault and GW had experienced a disruptive student protest at graduation with the same message, shortly before Ms. Roe filed her Title IX complaint.  Both events, Mr. Doe argues, caused public embarrassment for the University and caused it generally to have a bias against males accused of sexual assault.  In some cases, courts have indeed found that such external pressure can support a "plausible inference of gender discrimination" sufficient to deny a pre-discovery motion to dismiss.  *Doe v. Miami Univ.*, 882 F.3d at 594.  This Court agrees that such an inference may forestall dismissal.  However, a plausible inference is not sufficient to show likelihood of success on the merits as required for a preliminary injunction.   The Court will deny the motion for preliminary injunctive relief under Title IX.

### c.  *Liability Under DCHRA*

For similar reasons, Mr. Doe has failed to demonstrate a likelihood of success on the merits under the D.C. Human Rights Act (DCHRA), D.C. Code § 2-1401 *et seq.*[3]  DCHRA makes it "an unlawful discriminatory practice . . . for an educational institution" to "deny, restrict, or to abridge or condition the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person otherwise qualified, wholly or partially, for a discriminatory reason," including a student's sex.  D.C. Code § 2-1402.41(1).  DCHRA also

---

[3] The parties disagree as to whether a disparate impact claim can be advanced under Title IX, and GW urges the Court to avoid such an interpretation of DCHRA.  *See* Opp'n at 31-33.  The Court does not address these arguments in this Memorandum Opinion, which only addresses the motion for a preliminary injunction.

provides that "[a]ny practice which has a discriminatory effect . . . shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity."  D.C. Code § 2-1401.03(a).[4]

The record reveals no facts specific to Mr. Doe's claim that GW violated the DCHRA.  Rather, he relies on the evidence that the University had a bias against him, as a male student, and that it mishandled the panel hearing and his appeal.  As discussed above, only the evidence concerning Mr. Doe's appeal shows a likelihood of success on the merits for purposes of the motion for a preliminary injunction.  While Mr. Doe may ultimately present sufficient evidence to prove that the alleged bias against males led the University to "deny, restrict, or to abridge" his right to a full consideration of his appeal, the evidence to date does not meet the standard for preliminary relief.

### 2.   Irreparable Harm

The second necessary prerequisite to a preliminary injunction is a showing of irreparable harm if an injunction is not granted.  A plaintiff must demonstrate harm that is both "certain" and "great."  *See, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Save Jobs USA v. DHS*, 105 F. Supp. 3d 108, 114 (D.D.C. 2015) (ruling that plaintiff seeking a preliminary injunction must establish "proof that [his] injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm").  Although Mr. Doe has demonstrated a likelihood of success on one aspect of his breach of contract claim, he has failed to demonstrate

---

[4] Count V of the Complaint alleges that GW was negligent but it is not briefed or argued to support a preliminary injunction.  *See* Compl. ¶¶ 202-10.  Therefore, the Court does not address it here.

irreparable harm in the absence of a preliminary injunction, and therefore his case does not warrant such extraordinary relief.

Mr. Doe argues forcefully that a "gap" between the date of his degree and the date he begins graduate school or meaningful post-graduate employment will forever injure his record and require explanation of Ms. Roe's accusation to any future school or employer even if he succeeds at this lawsuit. However, the University will post-date Mr. Doe's diploma if he wins and a gap of one year between college and graduate school is neither unusual nor necessarily impactful. *Compare King v. DePauw Univ.*, No. 14-70, 2014 WL 4197507 (S.D. Ind. Aug. 22, 2014) (finding that a rising college senior would likely suffer irreparable harm if his suspension were not enjoined because it would cause "either a gap or a senior-year transfer on his record"), *with Walter v. Giuliani*, No. 98-9011, 1998 WL 712423, *1 (2d Cir. 1998) (affirming the district court's denial of a preliminary injunction to Police Academy applicants, based on precedent establishing "that a year's wait to enter graduate school is insufficient to constitute irreparable harm") (citing *Doe v. New York Univ.*, 666 F.2d 761, 773 (2d Cir. 1981) ("Ordinarily a one-year delay in obtaining admission to a graduate school for the purpose of pursuing professional studies, as distinguished from interruption or termination of attendance already in progress, is insufficient to warrant an injunction in the absence of other circumstances militating in favor of such relief.")).

Here, Mr. Doe has completed his college education and wants only his diploma; he does not ask to attend graduation. While he has been accepted to a graduate program and the loss of an immediate opportunity to enroll is agonizing, that loss is not irreparable, even if he studies at a different university. The gap on which he focuses attention happens normally in the lives of many students, who take a year to decide what to do after college, to travel, to become a

ski bum, to get work experience, and the like.  Such a year does not automatically raise a red flag

or cause difficult questions from a future graduate school or employer, especially if Mr. Doe puts

it to good use.  Under these circumstances, the cases on which Mr. Doe relies are inapposite

because they address a gap in an ongoing course of study and not one between college and

graduate school.  For these reasons, the Court concludes that Mr. Doe has not demonstrated the

likelihood of irreparable injury without a preliminary injunction.  *See Winter*, 555 U.S. at 22

("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate

that irreparable injury is *likely* in the absence of an injunction.").

### 3.  Balance of Harms

From the perspective of Mr. Doe, a college student, the equities are on his side

because "[i]t costs the University nothing to confer" his degree and he cannot enter graduate

school without it.  Mot. PI at 43.  The argument is not entirely convincing.  While GW is a

private university, it receives federal grants and is liable to the federal Department of Education

(DOE) if it fails to comply with DOE's directives concerning sexual harassment policies and

enforcement.  GW also decries the injury to its institutional credibility if a court order compelled

it "to misrepresent to the world that plaintiff has satisfied" the University's graduation

requirements and overrode the University's right to conduct its disciplinary and academic

business autonomously.  Opp'n at 42-43.

The decision of the D.C. Court of Appeals in *Alden v. Georgetown Univ.*, 734

A.2d 1103 (D.C. 1999), only supports this argument in part:  the court found that by issuing a

diploma, "a school . . . certifies to society that a student is well-versed in all of the knowledge

and skills required by his or her chosen profession."  *Id.* at 1109.  However, *Alden* is clear that

judicial deference is accorded to a university's academic decisions but *not* to its decisions on

alleged student misbehavior.  While GW is a private school and not required to assure

constitutional due process to its student body as would a public university, it must fulfill

obligations to its students that are deemed to be contractual in nature, as here.  *See, e.g.*, *Basch*,

370 A.2d at 1367 ("All of the parties . . . admit what is a general rule—that the relationship

between a university and its students is contractual in nature.  It is also accepted that the terms

set down in a university's bulletin become a part of that contract.").

      Each of these harms has been argued in different cases on different facts.  On

balance, recognizing the delay in Mr. Doe's graduate education even if he is innocent of Ms.

Roe's charge and his likelihood of success on part of his contract claim, the Court finds that the

University's institutional interest is outweighed by its student's interests.  The balance of harms

thus favors a preliminary injunction.

### 4.  Public Interest

      Mr. Doe argues that it is clearly in the public interest for students to be treated

fairly in university disciplinary processes.  GW argues that the public interest favors a

university's "being able to independently investigate and, when appropriate, discipline, its

students for misconduct."  Opp'n at 44.  The Court agrees that both parties identify a strong

public interest.  At this point in the litigation, and on the current record, the parties' arguments

regarding the public interest are equal and neither overcomes the other.  The public interest does

not support a preliminary injunction.

      Mr. Doe has not demonstrated that he is entitled to preliminary injunctive relief.

His motion for a preliminary injunction will be denied.

### B.  *Motion* in Limine *to Preclude Introduction of E.E.'s Phone Records*

Pursuant to an order of the Court, Mr. Doe obtained by subpoena the cellphone records of the witness E.E. to ascertain whether E.E. made or received any phone calls while Ms. Roe and Mr. Doe were traveling in the Uber.  *See* 3/16/2017 Minute Order.  Mr. Doe moves to introduce these records into evidence in this case; during the Court's hearing on the preliminary injunction on April 12, 2018, his counsel argued that because the records show that E.E. neither made nor received any calls during that time, her testimony before the panel that she spoke to Ms. Roe on the phone, and that Ms. Roe slurred her speech and sounded incoherent during the Uber ride, was not credible.  He further argues that this alleged telephone conversation was the only evidence that Mr. Doe should have known how drunk Ms. Roe was or should have known that Ms. Roe could not consent to sex; without it, he contends, there is no evidence that he should have known her condition.  GW argues that even if the subpoenaed phone records now suggest that E.E.'s testimony was not credible, the records were not presented to the hearing panel and are irrelevant to Mr. Doe's legal claims regarding the fairness of the process.

It is true that the cellphone records do not pertain to the Court's review of the fairness and reasonableness of the hearing panel's decision *at the time*.  However, the Court finds the cellphone records to be relevant to this case because they may be found to support Mr. Doe's contention that he is actually innocent of the behavior for which he was suspended.  *See, e.g.*, *Yusuf*, 35 F.3d at 715 (establishing that, to prevail on the "erroneous outcome" theory of Title IX liability, a student must demonstrate that he was not responsible for the conduct in question).  Thus, now that the cellphone records have been obtained, they are relevant to Mr. Doe's appeal.  The phone records will be admitted into evidence and GW's motion *in limine* will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Doe's Motion for a Preliminary Injunction, Dkt. 6, will be denied.  GW's Motion *in Limine* to Preclude Introduction of E.E.'s Phone Records, Dkt. 23, will be denied.  The Court will order expedited discovery and briefing in this case, so that this matter can be resolved before the passage of time renders it nearly moot.  The Court will convene a prompt status conference for that purpose.


Date: April 25, 2018                              _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Court

18