## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

               *Plaintiff,*

    v.

THE GEORGE WASHINGTON UNIVERSITY,

               *Defendant.*

Civil Action No. 1:18-CV-553-RMC

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated: May 30, 2018

/s/  *Joshua W. B. Richards*
James A. Keller, Esq. (D.C. Bar No. 1049037)
Joshua W. B. Richards, Esq. (D.C. Bar No. 1002821)
**SAUL EWING ARNSTEIN & LEHR LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
James.Keller@saul.com
Joshua.Richards@saul.com
*Admitted pro hac vice*

Jason A. Ross, Esq. (D.C. Fed. Bar No. 1047909)
**SAUL EWING ARNSTEIN & LEHR LLP**
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 4

ARGUMENT ..................................................................................................................... 5

**I.   Partial Summary Judgment is Inappropriate Because there are Genuine Disputes of Material Fact Related to Plaintiff's Breach of Contract Claim.** ................................ 5

   A.   The Appellate Procedures in the University's Code. ........................................ 5

   B.   The University Provided Plaintiff with All Appeal Rights Under the Code. ............... 7

      1.   Dr. Snyder Followed the University's Code in Considering Plaintiff's Appeal. ..... 8

      2.   Evidence Not Presented at the Original Hearing or Appeal is Not Relevant to the Sufficiency of the University's Appellate Process on this Motion. ................ 11

**II.  Summary Judgment on the Breach of Contract Claim is Inappropriate Because Plaintiff has Failed to Show that the Code Is a Contract.** .............................................. 13

   A.   Plaintiff has Failed to Show that the Code is a Contract between the University and a Student. ....................................................................... 13

   B.   The Code's Construction Prohibits Interpretation as a Contract. .............................. 14

**III. Even if the Court Grants Partial Summary Judgment to Plaintiff, the Remedy that Plaintiff Seeks is Inappropriate and Illusory.** ........................................................ 15

   A.   Plaintiff Seeks a Remedy that Provides Relief Beyond the Scope that he Could Have Received Under the Code. ............................................................... 15

   B.   A Remand to the University is an Illusory Remedy. .................................................. 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Akers v. Liberty Mut. Grp.*,
   744 F. Supp. 2d 92 (D.D.C. 2010) ......................................................................12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..........................................................................................4

*Arrington v. United States*,
   473 F.3d 329 (D.C. Cir. 2006) ......................................................................4, 5

*Aspire Channel, LLC v. Penngood, LLC*,
   139 F. Supp. 3d 382 (D.D.C. 2015) ..................................................................7

*Bain v. Howard Univ.*,
   968 F. Supp. 2d 294 (D.D.C. 2013), *aff'd sub nom.* No. 13-7174, 2014 WL
   1378308 (D.C. Cir. Mar. 25, 2014) ..................................................................8

*Brown v. Rector & Visitors of Univ. of Va.*,
   No. 07-00030, 2008 WL 1943956 (W.D. Va. May 2, 2008), *aff'd sub nom.*
   361 F. App'x 531 (4th Cir. 2010) ..............................................................14, 15

*Carroll v. Fremont Inv. & Loan*,
   636 F. Supp. 2d 41 (D.D.C. 2009) ..................................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..........................................................................................4

*Davis v. Joseph J. Magnolia, Inc.*,
   640 F. Supp. 2d 38 (D.D.C. 2009) ..................................................................15

*Davis v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) ..........................................................................................9

*Drazin v. Am. Oil Co.*,
   395 A.2d 32 (D.C. 1978) ................................................................................16

*Green v. Sandy*,
   No. 10-367, 2011 WL 4688639 (E.D. Ky. Oct. 3, 2011) ................................14

*Greene v. Dalton*,
   164 F.3d 671 (D.C. Cir. 1999) ..........................................................................4

*Hajjar-Nejad v. George Washington Univ.*,
   37 F. Supp. 3d 90 (D.D.C. 2014) ......................................................................8

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) .......................................................................4

*Howard Univ. v. Best*,
    484 A.2d 958 (D.C. 1984) ....................................................................................6

*Jaksa v. Regents of Univ. of Michigan*,
    597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd,* 787 F.2d 590 (6th Cir. 1986) .............9

*U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*,
    456 F. Supp. 2d 46 (D.D.C. 2006) .......................................................................4

*Katz v. Georgetown Univ.*,
    246 F.3d 685 (D.C. Cir. 2001) .............................................................................6

*Manago v. D.C.*,
    934 A.2d 925 (D.C. 2007) ..................................................................................14

*Mosby-Nickens v. Howard Univ.*,
    864 F. Supp. 2d 93 (D.D.C. 2012) .....................................................................13

*Nash v. Auburn Univ.*,
    812 F.2d 655 (11th Cir. 1987) .............................................................................9

*Nat'l R.R. Passenger Corp. v. Consolidated Rail Corp.*,
    670 F. Supp. 424 (D.D.C. 1987) ..........................................................................4

*Oldcastle Materials, Inc. v. Rohlin*,
    343 F. Supp. 2d 762 (N.D. Iowa 2004) ...............................................................16

*Paulin v. George Washington Univ. Sch. of Med. & Health Scis.*,
    878 F. Supp. 2d 241 (D.D.C. 2012) .....................................................................8

*Shinabargar v. Bd. of Trustees of Univ. of D.C.*,
    164 F. Supp. 3d 1 (D.D.C. 2016) ..................................................................13, 14

*Sibert-Dean v. WMATA*,
    751 F. Supp. 2d 87 (D.D.C. 2010) .......................................................................5

*Tacka v. Georgetown Univ.*,
    193 F. Supp. 2d 43 (D.D.C. 2001) .......................................................................6

*Waterhouse v. District of Columbia*,
    298 F.3d 989 (D.C. Cir. 2002) .............................................................................4

*Wilson v. Hayes*,
    77 A.3d 392 (D.C. 2013) ....................................................................................16

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................................................................4

Fed. R. Civ. P. 56(c)(2)........................................................................................................12

Fed. R. of Evidence 407........................................................................................................12

Defendant The George Washington University (the "university") submits this memorandum of law in opposition to the motion for partial summary judgment (the "Motion") by Plaintiff John Doe ("Doe" or "plaintiff") on the issue of whether the university breached its alleged contract with Doe when it purportedly "rejected his appeal without considering it on the merits." (Doc. #27-1, plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, "Pl. Br.", at 2). That is the sole issue on summary judgment, notwithstanding the volume of extraneous arguments presented by Doe.

Partial summary judgment here is inappropriate because the material facts of record are genuinely in dispute. Both the law and evidence of record demonstrate the university did not breach any obligation it owed to plaintiff. In particular: (1) the Declaration of appellate officer Dr. Robert Snyder (the "Snyder Declaration") creates numerous disputes of material fact that are unable to be reconciled at summary judgment; and (2) plaintiff has not shown that the university's Student Code of Conduct (the "Code") forms a contract between the university and plaintiff. Finally, in the event that the Court finds that partial summary judgment against the university is appropriate, the remedy plaintiff seeks is inappropriate.

## **INTRODUCTION**

Plaintiff has moved for partial summary judgment on his claim that the university breached a contractual obligation to him when it "wrongly refused to consider the merits of his appeal of the disciplinary finding against him." (Pl. Br. at 1). While plaintiff goes on at great length in his brief about other matters, the only issue before the Court is whether the university breached its contractual obligations to plaintiff in its early 2018 consideration of his appeal.

Plaintiff contends the university breached its own policies by allegedly failing to consider two pieces of evidence on appeal that were not before the hearing panel: a toxicology report and

1

a statement from plaintiff's friend, Q.W.  (Pl. Br. at 22-24).  The record demonstrates that this contention is wrong.  The merits of both pieces of evidence submitted by plaintiff *were* considered by the university's appellate officer in exactly the way the university's Code prescribes.  As a result, plaintiff cannot show the absence of a material factual dispute.  For the overwhelming majority of his Motion, he does not even try.

Rather than address the narrow issue before the Court, plaintiff again simply levels post-hoc attacks on the credibility of the evidence presented at his original disciplinary hearing and relies on post-litigation events to try to impeach a disciplinary process that concluded months ago.  Plaintiff also takes full advantage of his opportunity to tell his version of his story in the absence of other fact witnesses who might refute it.  These matters may be relevant for other claims brought by plaintiff in this lawsuit, and they may not be.  What is certain is that they play no role in the matter before the Court now.

At bottom, plaintiff's insistence on detailing the collateral ways he believes himself to have been wronged comes at the expense of showing he is entitled to the relief sought in the instant Motion.  Did the university breach a contract with plaintiff by not properly considering the two pieces of evidence plaintiff submitted in his appeal letter?  It did not, as demonstrated in the Snyder Declaration, but in reading plaintiff's brief one would hardly know that was the question being asked.

Here are the facts that are relevant for purposes of Doe's Motion:  Doe is a student at the university.   He was suspended in January 2018 for one year following the university's investigation and adjudication of a complaint by another student – Jane Roe ("Roe") – that plaintiff had sexually assaulted her.  (*See* Doc. 17, Ex. C at ¶ 9).  Once a sexual assault complaint was lodged against plaintiff, the university had an obligation to investigate and adjudicate it.

The university did investigate the complaint, and held a full and fair hearing at which three panel members heard testimony from plaintiff, Roe, and several witnesses in accordance with the procedures laid out in the Code. (*See generally* Hearing Transcript, attached as <u>Exhibit A</u>). The hearing panel decided by a preponderance of the evidence that plaintiff had sex with Roe while she was incapacitated. The panel determined that suspension was the appropriate disciplinary sanction. (*See* University Hearing Board Adjudication Report, attached as <u>Exhibit B</u>).

Doe appealed the decision to the university's appellate authority, Dr. Robert Snyder. (*See* Doc. 27, Ex. 13). Dr. Snyder, the university's Executive Director of Planning and Outreach, is the appellate authority for all appeals of university disciplinary proceedings involving sexual misconduct, a position he has held for over six years. (Snyder Decl. at ¶ 5). After reviewing Doe's appeal in accordance with the terms of the Code and his past practice, Dr. Snyder determined in good faith that Doe's appeal did not meet either of the two independent prerequisite requirements of Article 33 of the Code, which governs appeals. (*Id*. at ¶¶ 11, 12).

An appealing party must present evidence that meets two requirements under the Code: (1) new information that is relevant to the case, that was not previously presented, which (2) *significantly alters the findings of fact*. (*Id*. at ¶ 6) (emphasis added). Upon review, Dr. Snyder determined that the appeal did not meet the requirements of a viable appeal under the Code, and he issued a form dismissal letter. (*Id*. at ¶ 9).

In this lawsuit plaintiff challenges that discipline, and in the instant Motion contends he is entitled to summary judgment on the question of whether his appeal was properly handled. As set forth above and below, hornbook contract law and disputed material facts, including those stated in the attached Declaration of Dr. Snyder, preclude summary judgment.

## **STANDARD OF REVIEW**

Summary judgment is appropriate only where, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Waterhouse*, 298 F.3d at 992; *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 56 (D.D.C. 2007).

In deciding a motion for summary judgment, the evidence of the non-movant is to be believed, along with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). When adjudicating a motion for summary judgment, the Court must: (1) assume the truth of all statements proffered by the non-movant; (2) construe all evidence and inferences in favor of the non-moving party; and (3) not make credibility determinations or weigh the evidence. *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 53-54 (D.D.C. 2006) (citations omitted). In other words, "so that no person is deprived of his or her day in court, 'the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion.'" *Nat'l R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F. Supp. 424, 433 (D.D.C. 1987) (citations omitted). Accordingly, summary judgment should only be granted in the clearest cases. *Id.*

The non-moving party may defeat summary judgment through factual representations made in a sworn affidavit, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999), or by providing

testimonial evidence, *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  *See also*

*Sibert-Dean v. WMATA*, 751 F. Supp. 2d 87, 90 (D.D.C. 2010).

On the record before the Court, plaintiff has failed to carry his burden.  (*See generally*,

Statement Of Material Facts in Dispute; Snyder Declaration).

## ARGUMENT

### I.      Partial Summary Judgment is Inappropriate Because there are Genuine Disputes of Material Fact Related to Plaintiff's Breach of Contract Claim.

Summary judgment is not appropriate because the facts set forth in Dr. Snyder's

Declaration preclude it.  Plaintiff contends that "the undisputed facts also show that the

information contained in Mr. Doe's appeal was capable of significantly altering the hearing

panel's findings."  (Pl. Br. at 24).  Whether plaintiff's statement in that is correct (it is not) is an

academic matter, however, because it is not the issue before the Court.  Instead, the question is

something much narrower – did the university comply with its own Code, which requires its

appellate officer to follow certain procedures and apply certain standards in good faith in

adjudicating plaintiff's appeal?  The evidence of record demonstrates that the university did

follow its own procedures, and in a manner that was dispositive of plaintiff's appeal.

Plaintiff has presented no facts on summary judgment to the contrary – only argument

about how he would have decided the appeal question differently.  And, even if he had presented

such facts, they would at most create a material issue of disputed fact with those facts presented

by Dr. Snyder here.

### A.      The Appellate Procedures in the University's Code.

Article 33 of the Code, the provision plaintiff contends was breached by the university,

reads: "Appeals must be based on new information that is relevant to the case, that was not

previously presented at the hearing or conference, ***and that significantly alters the findings of***

*fact*." (Code, attached as <u>Exhibit D</u> at 8) (emphasis added).  Importantly, the provision does not read "*might* significantly alter," or "*is capable of* significantly altering."  It reads, effectively, "*does* significantly alter."  Who is tasked with making that determination?  The appellate officer.  The factual record shows that the appellate officer did just that.

The university interprets its own Code[1] to require the appellate officer to review the appeal to consider two factors.  (Snyder Declaration, attached <u>Exhibit E</u> at ¶ 6).  If, and only if, the appellate officer finds that both of these two conditions are met, he certifies the appeal and sends it to the Chair of the Committee on the Judicial System for further proceedings.  (*Id.* at ¶ 8).  On the other hand, if the appealing party fails to satisfy one or both of the conditions, the appeal ends and the determination of the hearing panel is deemed final.  (*Id.* at ¶¶ 6, 9).

*First*, the appellate officer determines whether there is "new" relevant evidence that was not available during the adjudication.[2]  (*Id.* at ¶ 6).  *Second*, that information must significantly alter the findings of fact as stated by the hearing panel.  (*Id.* at ¶ 6).  In the event that an appeal

---

[1]     The university's interpretation of its own policies is preeminently relevant to their meaning.  *See*, *e.g.*, *Katz v. Georgetown Univ.*, 246 F.3d 685, 690 (D.C. Cir. 2001) ("It is undoubtedly correct that ambiguous [faculty handbook] contract terms 'must be construed in keeping with general usage and custom at the University and within the academic community.'"); *Tacka v. Georgetown Univ.*, 193 F. Supp. 2d 43, 48 (D.D.C. 2001) (grievance panel's interpretations were relevant "to construe the terms of the contract created by the Faculty Handbook in accordance with the University's understanding, and create a question of material fact as to Georgetown's custom and practice."); *see also Howard Univ. v. Best*, 484 A.2d 958, 967–68 (D.C. 1984) ("in the absence of an express term to the contrary, the usual practices surrounding a contractual relationship can become the contractual obligation.  Thus, if we find that the meaning of the disputed language in a contract is open to several reasonable interpretations in view of a usage or custom, the issue of whether a party knew or had reason to know of a usage would present a question of fact for the jury.").

[2]     The university is cognizant that the Court has heard extensive argument on the plain meaning of the "new evidence" Code language prior to this Motion.  It will not belabor the point further here other than to incorporate its arguments made at the preliminary injunction stage and preserve them here for appeal, if necessary.

does not meet both of these conditions, an appellant is sent a form letter stating that their appeal has not met the conditions of the Code to move forward.  (*Id.* at ¶ 9).

If the Code is a contract, to succeed plaintiff must show that Dr. Snyder did not comply with the Code's provisions in performing his duties under Article 33.  *See Aspire Channel, LLC v. Penngood, LLC*, 139 F. Supp. 3d 382, 388 (D.D.C. 2015) (to show a breach of contract for summary judgment, a plaintiff must establish that there was an actual duty under the contract, and that the defendant breached that duty by failing to perform its obligations).

Plaintiff attempts to accomplish this by trying to change the rules midstream – he openly, and without support, modifies the terms of the handbook and presents the word "viable" to the Court as a modifier.  (Pl. Br. at 21) ("Mr. Snyder was limited to determining the appeal's 'viability.'").  In adding this word in a place it does not actually appear in the Code, plaintiff asserts that Dr. Snyder's role is only to determine if something has the "potential" to succeed, portraying his role as merely a stepping stone bereft of any substantive obligation.  (*Id.*).  This formulation is wrong.

In doing so, plaintiff resorts to arguing that the standard articulated in the Code does not mean what it says.  (Snyder Decl. at ¶¶ 6-9).  Dr. Snyder does not determine whether a piece of evidence presented on appeal is "capable" of succeeding, or has no "reasonable chance of success."  (*See* Pl. Br. at 22).  Dr. Snyder instead makes the determination of whether the information in his discretion objectively ***significantly alters*** the findings of fact.  (Snyder Decl. at ¶ 6) (emphasis added).  That is precisely what he did.

## B.    The University Provided Plaintiff with All Appeal Rights Under the Code.

The factual record shows that even if the Code is a contract, the university complied fully with its terms.  Dr. Snyder reviewed plaintiff's appeal letter and processed it according to the

Code and to his normal practice.  (Snyder Decl. at ¶¶ 6, 10).  Dr. Snyder reviewed Doe's appeal and also the underlying disciplinary file.  (*Id.* at ¶ 10).  He concluded for two independent reasons that Doe had not met the necessary thresholds for an appeal.  (*Id.* at ¶ 11).

    1.    <u>Dr. Snyder Followed the University's Code in Considering Plaintiff's Appeal.</u>

The university complied with its stated procedures because Dr. Snyder determined that the information presented on appeal did not significantly alter the findings of fact, a substantive gatekeeping function of the appellate officer before the appeal can be sent forward to the next step in the appeal process.  (Snyder Decl. at ¶¶ 11-15).

Dr. Snyder's discretion during the appellate process is protected by an exceedingly deferential standard of review where plaintiff must prove "no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Paulin v. George Washington Univ. Sch. of Med. & Health Scis.*, 878 F. Supp. 2d 241, 247 (D.D.C. 2012); *see also Bain v. Howard Univ.*, 968 F. Supp. 2d 294, 299 (D.D.C. 2013), *aff'd sub nom.* No. 13-7174, 2014 WL 1378308 (D.C. Cir. Mar. 25, 2014) (same).

Courts have applied this high standard to claims involving non-academic misconduct, such as the sexual misconduct claims against plaintiff.  *See also Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 117 (D.D.C. 2014) (refusing to apply lesser standard of review for medical student dismissal related to lack of professional comportment, as opposed to purely academic issues). Moreover, a student's "rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987); *see also Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984), *aff'd,* 787 F.2d 590 (6th Cir. 1986).  Plaintiff has not offered any alternative standard.  (*See* Pl. Br. at 21 n.11).

Plaintiff improperly misrepresents and diminishes the language of the Code in his Motion, arguing that "the undisputed facts also show that the information contained in Mr. Doe's appeal *was capable of* significantly altering the hearing panel's findings." (Pl. Br. at 24) (emphasis added). The more fundamental weakness of plaintiff's argument, however, is that the relief he seeks is predicated on the essential implicit and improper request that this Court substitute its own judgment (or plaintiff's one-sided judgment) for Dr. Snyder's with respect to the question of whether the two pieces of evidence submitted by plaintiff "significantly alter the findings of fact."

Plaintiff makes this request without citation to the clear admonition from the United States Supreme Court that courts should refrain from substituting their judgment for that of experienced university administrators and without reference to Dr. Snyder's own fifteen years of experience in student conduct proceedings. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). The Court acknowledged this point multiple times at the hearing on plaintiff's motion for preliminary injunction when it noted that, "[i]t is not — and it can't be an appeal from the university's panel conclusion because that's not my job," and further, "I can't — despite the arguments from counsel, I can't say that it was a wrong result. All I can say is that the process was not properly [followed]." (*See* Transcript of Oral Argument on Preliminary Injunction, Apr. 12, 2018, at pg. 32, 7-8, pg. 36, 21-24, attached as Exhibit G). It is, accordingly, not enough for plaintiff to argue he would have decided it differently, or that Dr. Snyder should have decided it differently. Plaintiff must show that Dr. Snyder did not decide anything at all, or that he made his decision in bad faith. The record on this Motion cannot support such weight.

It is undisputed that Dr. Snyder found that the Q.W. statement did not significantly alter the findings of facts because the contents of the statement were not materially different from

other testimony offered by the respondent and was not significant enough to outweigh the ample evidence to the contrary provided by Roe and her witnesses.  (Snyder Decl. at ¶ 13); (*see also* Doc. 17 at 2, 3).[3]  Dr. Snyder similarly found that the Milman toxicology report did not significantly alter the findings of fact.  (Snyder Decl. at ¶ 14).  He determined that the core concept of the toxicology report was that, if a woman the size of Roe consumed as much alcohol as she was purported to have consumed within the timeframe that she was alleged to have consumed it, she would be dangerously intoxicated.  (*See* Doc. 27, Ex. 15).  Dr. Snyder found that the information related to the consumption of alcohol and the consequential intoxication of Roe was all before the hearing panel already.  (Snyder Decl. at ¶ 14).

As the Court has recognized, the same information that Dr. Milman used to create the toxicology report was presented to the original adjudicators.  (*See* Doc. 25 at 3); (*see also* Ex. A at 8, 9, 23, 28).  Consequently, the hearing panel had sufficient knowledge, information, and opportunity to consider and reach a reasoned conclusion based on the information without the addition of an expert report.  Because the hearing panel already considered this information, Dr. Snyder found that this information was not likely to alter the outcome of the disciplinary proceedings.  (Snyder Decl. at ¶ 14).

While Dr. Snyder determined that each individual piece of evidence would not independently alter the findings of fact, he also considered whether the two pieces of evidence, taken together, would otherwise do so.  He determined that the Q.W. statement and the Milman report in the aggregate were not sufficient to change the findings.  (Snyder Decl. at ¶ 15).  Therefore, plaintiff's appeal appropriately failed.

---

[3]     The university has already addressed plaintiff's attempts to collaterally attack the unfavorable evidence against him at the disciplinary hearing.  (*See* Doc. 17, at 2-5, 16-19).  In short, there was a wealth of uncontroverted evidence presented at the hearing relating to Roe's high level of intoxication.

2. <u>Evidence Not Presented at the Original Hearing or Appeal is Not Relevant to the Sufficiency of the University's Appellate Process on this Motion.</u>

It should hardly be necessary to point out that E.E.'s phone records were not part of plaintiff's appeal (or the original hearing), but notwithstanding that fact, plaintiff devotes a large proportion of his brief to the phone records and other evidence never presented to Dr. Snyder.

Plaintiff contends, without support, that the alleged phone call between Roe and E.E. was "primary fact on which the board relied in concluding that Mr. Doe should have known that she was incapacitated." (Pl. Br. at 24). He suggests that "[the phone records] unquestionably *are capable of* significantly altering the findings of facts." (*Id.* at 26) (emphasis added). Ignoring Ms. Roe's own testimony, plaintiff announces that "[t]he phone records do nothing less than eliminate the panel's primary basis for concluding that Mr. Doe should have known Ms. Roe was incapacitated." (*Id.*). Thus, according to plaintiff, the phone records become "the most important evidence in the entire disciplinary proceeding." (*Id.* at 1). This last pronouncement is neither true given a fair read of the panel's opinion nor is it cited to the record.[4]

---

[4]     While it is abundantly clear that the E.E. phone records have no relevance on the question of liability in this case or the merits of this Motion, plaintiff's persistence in raising them at every opportunity compels the university to address, briefly, the fact that the phone records amount to far less than plaintiff would like.

After plaintiff commenced this lawsuit, he also leveled a student-conduct complaint against Jane Roe in connection with her testimony at his hearing, (*see* Muha Decl. at ¶ 21). In response to plaintiff's student-conduct complaint, the university's student conduct office asked Roe to provide her own phone records from the night in question, which she did. (*See* Richards Decl. Ex. F).

As it turns out, Jane Roe in fact had *three* phone calls while in the Uber with John Doe. (*See* Roe Phone Records, attached as <u>Exhibit F</u> at ¶ 7 (relevant portions highlighted for the Court's convenience)). Roe's records demonstrate that John Doe's affidavit submitted in connection with his motion for preliminary injunction – in which he testified that Jane Roe had *no* phone calls while in the Uber (*see* Doc. No. 6, Ex. 20 at ¶ 4) – was accordingly not just self-serving, it was false. The fact that plaintiff appears to have provided false testimony in his Declaration (and at the university's hearing) is less important for present purposes than the

Plaintiff also attempts to use the university's recent internal deliberations related to a potential update of the Code as evidence that the existing Code procedures were somehow deficient. (*See* Pl. Br. at 17-18). This is improper for at least two reasons. *First*, the issue before the Court is not whether the Code was "inadequate." One issue before the Court is, however, whether plaintiff was provided the process set forth in the Code *as it existed then*. *Second*, on summary judgment, only evidence that would be admissible at trial may be considered. *See* Fed. R. Civ. P. 56(c)(2); *see also Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92, 96 (D.D.C. 2010) ("evidence considered at summary judgment must be capable 'of being converted into admissible evidence.'"). Potential subsequent revisions made to the Code by the university are inadmissible as subsequent remedial measures under Federal Rule of Evidence 407 even if they were relevant, which they are not.

In sum, the Code, if it is a contract at all, only guarantees the appeal procedures outlined in Article 33. Consequently, Doe was not guaranteed a positive outcome from his appeal, nor was he guaranteed a rehearing or secondary review by an appellate panel. Instead, the Code stated that the appeal letter would be reviewed under the conditions laid out in the Code. Dr. Snyder provided this review in good faith, and performed all requirements contemplated by the Code. (Ex. D at 8); (Snyder Decl. at ¶ 6). Dr. Snyder performed his review using the very same analysis and same interpretation of the Code that he has used to process every appeal of a student discipline case in the last five years where he has been solely responsible for hearing *all* disciplinary appeals for the university outside the context of academic integrity. (Snyder Decl. at

---

reality that the E.E.'s phone records are not the sort of "silver bullet" evidence plaintiff wishes them to be. Indeed, the phone records taken together do little more than further muddy the waters in an internal disciplinary proceeding in which the material facts were already disputed (though they do provide a potential explanation for the "*we* called [Jane Roe]" testimony that plaintiff maligns in his papers). (*See*, *e.g.*, Pl. Br. at 7).

¶¶ 5, 6).  To the extent that the Code is a contract, the factual record shows that the university complied fully with its obligations under Article 33.

**II**.   **Summary Judgment on the Breach of Contract Claim is Inappropriate Because Plaintiff has Failed to Show that the Code Is a Contract.**

    **A.**   **Plaintiff has Failed to Show that the Code is a Contract between the University and a Student.**

This Court has determined that the relationship between the university and Doe "is contractual in nature and permits suit for its breach." (Doc. 25, at 7).  While the university does not dispute here the portion of the Court's determination that stands for the proposition that "the relationship between a university and its students *can* be contractual in nature," *Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93, 98 (D.D.C. 2012) (emphasis added), "a plaintiff must nevertheless '[show] sufficient facts to demonstrate the terms of the contract'" in each case that arises.  *Id.* (dismissing breach of contract claim where the plaintiff failed to plead or prove that university intended to be bound by school regulations).

In other words, merely determining that a student code *can* be a contract does not show that the Code at issue in this case *is* a contract.  "Whether 'a given section of a [student handbook] also becomes part of the contractual obligations between the students and the university depends upon general principles of contract construction.'"  *Mosby-Nickens*, 864 F. Supp. 2d at 98; *see also Shinabargar v. Bd. of Trustees of Univ. of D.C.*, 164 F. Supp. 3d 1, 29 (D.D.C. 2016) (holding that university honor code lacked intent to be bound and mutuality of obligation, rendering it not enforceable); *Manago v. D.C.*, 934 A.2d 925, 927 (D.C. 2007) (finding that student failed to demonstrate terms of the contract).

The Court did not undertake this inquiry in any substantive sense in its opinion on plaintiff's motion for preliminary injunction, and the university respectfully argues that upon

doing so, the Court should conclude that in this instance the Code does not constitute an enforceable contract between the university and plaintiff.

### B.     The Code's Construction Prohibits Interpretation as a Contract.

The Code as written cannot be interpreted as a contract because it preserves the university's unilateral right to modify the Code without notice to, or the consent of, students, (Ex. D at 9, Sect. I) ("University reserves the right to modify or change requirements, rules, and fees . . . The right is reserved by the University to make changes in programs without notice whenever circumstances warrant such changes."), unambiguously expressing a lack of intent to be contractually bound by the Code on the part of the university.  *See Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 49 (D.D.C. 2009) ("To determine whether the parties intended to be bound, the Court must examine the parties objective manifestations of intent.").

Absent an intent to be legally bound to specific provisions of the Code on the part of the university, which Doe has not shown, Doe's contract claim fails from the outset.  *See*, *e.g.*, *Shinabargar*, 164 F. Supp. 3d at 29 (holding that university honor code lacked intent to be bound); *see also Green v. Sandy*, No. 10-367, 2011 WL 4688639, at *4 (E.D. Ky. Oct. 3, 2011) (court was "not immediately persuaded that the [student] handbook could ever be understood as a contract" because university reserved the right to modify the handbook at any time); *Brown v. Rector & Visitors of Univ. of Va.*, No. 07-00030, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008), *aff'd sub nom.* 361 F. App'x 531 (4th Cir. 2010) (reservation of right to change student handbook rendered contract illusory due to lack of mutuality of obligation).

It is hornbook contract law that an agreement which one party can unilaterally change without input, notice, or consequence is no contract at all.  Under the terms of the Code, the university is not bound by mutual consideration, and thus if the Code were a contract, it would

be illusory and unenforceable.  *See Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009) ("A contract lacks consideration when one party's promise is illusory, and a promise is illusory when performance of that promise is optional.").

For this reason alone, summary judgment on plaintiff's breach of contract claim fails.

**III.    Even if the Court Grants Partial Summary Judgment to Plaintiff, the Remedy that Plaintiff Seeks is Inappropriate and Illusory.**

**A.    Plaintiff Seeks a Remedy that Provides Relief Beyond the Scope that he Could Have Received Under the Code.**

Even if plaintiff had shown he was entitled to relief, which he has not, the remedy he seeks here is extraordinary and disfavored.  Plaintiff's request to rewrite the Code and force the university to repeat an appeal on his new, unilateral terms should be denied.

Plaintiff asks the Court to apply an arbitrary, accelerated timeline of twenty days for a decision on the merits of his appeal (seemingly also asking the Court to bypass Dr. Snyder's appellate function altogether in the process), to allow the phone records of E.E. to be considered as evidence on appeal, and to allow plaintiff to brief the appeal again to consider the phone records.  (Pl. Br. at 26).

The basis for plaintiff's cause of action – an alleged contract created by the terms of the Code – already contains definite terms.  If the Code is a contract, plaintiff can seek no more as a remedy than what he would have gotten if his appeal had been handled according to the Code's terms.  *See Wilson v. Hayes*, 77 A.3d 392, 405 (D.C. 2013) ("Specific performance is literal. Without question, specific performance 'is a remedy that compels the performance of the contract in the *precise terms* agreed upon.'") (citations omitted).

The terms of the Code even as plaintiff interprets them, however, would afford him *none* of the requested relief.  At most, under the Code, plaintiff would be entitled to an appeal to Dr.

Snyder in the ordinary course based upon the ordinary appellate procedures of the Code (not additional briefing or consideration on evidence acquired long after the proceedings closed).

Instead of this stated process, plaintiff seeks a windfall in equity, and as remedy for breach of contract seeks an entirely new set of much more favorable contract terms that transform the Code into a process dictated by plaintiff. Such relief is inappropriate. *See Drazin v. Am. Oil Co.*, 395 A.2d 32, 34 (D.C. 1978) ("Generally, [specific performance] is a remedy that compels the performance of the contract in the Precise terms agreed upon."); *see also Oldcastle Materials, Inc. v. Rohlin*, 343 F. Supp. 2d 762, 776 (N.D. Iowa 2004) ("Specific performance is the remedy of requiring exact performance of a contract in the specific form in which it was made, or according to the precise terms agreed upon.").

### B.    A Remand to the University is an Illusory Remedy.

The relief sought by plaintiff is also illusory in the sense that on a "remand," the remedy is for the appellate officer to consider evidence he "should have" considered originally. But consideration of that evidence – the toxicology report and Q.W.'s statement – is of course exactly what Dr. Snyder has already done. Plaintiff simply did not like the outcome.

Plaintiff has committed much of his argument to the purported lies he says were exposed by E.E.'s phone records. Indeed, plaintiff commences his papers by dramatically announcing that at "some point, the truth has to matter" and concludes his request for relief stating "Ms. Roe and E.E. fabricated evidence, the most critical evidence in the case." (Pl. Br. at 26). Roe's phone records (*see* Ex. F) present a picture that is far less clear, though. Plaintiff will no doubt spin this new evidence as best he can, but the reality is that the phone records taken together demonstrate, at the very least, that John Doe has presented evidence that was not true with respect to whether Roe spoke on the phone while in the Uber. (*See* Doc. No. 6, Ex. 20 at ¶ 4).

To order the university to depart from its written policies to engage in a "re-do" on the basis of evidence (1) never presented to the appellate officer that was (2) not acquired until this litigation began, and which (3) even in the best light shows that John Doe himself lied during the proceedings, is an extraordinary and wholly unwarranted remedy.

## CONCLUSION

At bottom, the phone records have no bearing on whether the university breached any duty owed to plaintiff in adjudicating his appeal.  However, the records do demonstrate that there will be no new easy answers, nor will there be any new manifest truths on the requested remand plaintiff suggests will cure all ills.  More to the point, the records should refocus the parties on the question that actually matters on this Motion: viewing the evidence in the light most favorable to the university, is there *no dispute* of material fact as to whether the appellate officer followed the process in the Code?  Respectfully, it is abundantly clear that there is such a dispute.  For all the foregoing reasons, plaintiff's motion for partial summary judgment must be denied.

Dated: May 30, 2018

/s/  *Joshua W. B. Richards*

James A. Keller, Esq. (D.C. Bar No. 1049037)
Joshua W. B. Richards, Esq. (D.C. Bar No. 1002821)
**SAUL EWING ARNSTEIN & LEHR LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
James.Keller@saul.com
Joshua.Richards@saul.com
*Admitted pro hac vice*

Jason A. Ross, Esq. (D.C. Fed. Bar No. 1047909)
**SAUL EWING ARNSTEIN & LEHR LLP**
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT w**as served today via the Court's ECF filing system upon:

Justin Dillon, Esq.
Christopher C. Muha, Esq.
KAISERDILLON PLLC
1401 K Street NW, Suite 600
Washington, DC 20005
jdillon@kaiserdillon.com
cmuha@kaiserdillon.com
*Attorneys for Plaintiff John Doe*

Dated: May 30, 2018                    /s/  *Joshua W. B. Richards*_____
                                       James A. Keller, Esq. (D.C. Bar No. 1049037)
                                       Joshua W. B. Richards, Esq. (D.C. Bar No. 1002821)
                                       **SAUL EWING ARNSTEIN & LEHR LLP**
                                       Centre Square West
                                       1500 Market Street, 38th Floor
                                       Philadelphia, PA 19102
                                       James.Keller@saul.com
                                       Joshua.Richards@saul.com
                                       *Admitted pro hac vice*

                                       Jason A. Ross, Esq. (D.C. Fed. Bar No. 1047909)
                                       **SAUL EWING ARNSTEIN & LEHR LLP**
                                       1919 Pennsylvania Avenue, N.W., Suite 550
                                       Washington, DC 20006
                                       Jason.Ross@saul.com

                                       *Counsel for Defendant*