**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE, | : |
| *Plaintiff*, | : |
| | : |
| v. | : |
| | :   Civil Action No. 1:18-CV-553-RMC |
| THE GEORGE WASHINGTON UNIVERSITY, | : |
| | : |
| *Defendant*. | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

Dated: October 19, 2018

/s/ *Joshua W. B. Richards*
Joshua W. B. Richards, Esq. (D.C. Bar No. 1002821)
**SAUL EWING ARNSTEIN & LEHR LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Joshua.Richards@saul.com

Jason A. Ross, Esq. (D.C. Fed. Bar No. 1047909)
**SAUL EWING ARNSTEIN & LEHR LLP**
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**...................................................................................................... 1

**RELEVANT FACTUAL BACKGROUND**.................................................................. 3

**LEGAL STANDARD** .................................................................................................. 6

**ARGUMENT**.............................................................................................................. 7

I.   Breach of Contract ............................................................................................. 7

   A.   Nothing Remains of Plaintiff's Breach of Contract Claim Because the
        University Complied with its Duties to Plaintiff as Defined by the Court. ........... 7

      1.   Procedures Set Forth in the Code and Policy.............................................. 8

      2.   Plaintiff Received all Review Procedures Set Forth in the Policy.............. 9

         i.   Plaintiff fails to show that the university violated its
              policies merely because the hearing panel weighed the
              credibility of the parties. ................................................................ 9

         ii.  Plaintiff's arguments related to alleged bias are not
              persuasive....................................................................................... 10

         iii. Plaintiff's allegations regarding the consideration of his
              appeal do not state a claim for breach of contract. ....................... 11

   B.   Plaintiff Fails to State a Claim for Breach of the Implied Covenant of
        Good Faith and Fair Dealing.................................................................................. 12

      1.   Plaintiff's Good Faith and Fair Dealing Claim is Duplicative of his
           Purported Breach of Contract Claim......................................................... 12

      2.   An Implied Covenant of Good Faith and Fair Dealing Claim
           Cannot Expand the Express Terms of an Alleged Contract. .................... 13

      3.   The Arbitrary and Capricious Standard Requires A Showing of
           Bad Faith or Arbitrary Decision Making. ................................................. 13

II.  Plaintiff Fails to State a Claim Under Title IX ................................................. 15

   A.   Plaintiff Cannot State a Claim Based on an Erroneous Outcome Theory ........... 16

      1.   OCR Pressure............................................................................................. 18

2.      Generic pressure........................................................................ 19

3.      Aniqa Raihan Lawsuit............................................................... 20

B.      Selective Enforcement ........................................................................ 20

III.    Plaintiff Fails to State a Claim under the D.C. Human Rights Act. ................................ 22

A.      Disparate Treatment............................................................................ 22

B.      Disparate Impact ................................................................................ 22

C.      This Court Should Not Recognize a Disparate Impact Claim Under
        Section 2-1402.41 of the D.C. Human Rights Act. ................................ 22

        1.      Title IX Does Not Permit a Disparate Impact Claim, and this Court
                Should Interpret the D.C. Human Rights Act in Accord. ......................... 22

        2.      If the Court Permits a Disparate Impact Claim Under the D.C.
                Human Rights Act, it will Create a Conflict with Federal Law............... 24

        3.      Plaintiff Otherwise Cannot Allege Facts to State a Disparate
                Impact Claim........................................................................................... 26

                i.      Plaintiff confuses purported instances of facial
                        discrimination with his disparate impact claim. ......................... 26

                ii.     The university is exempt under the business necessity
                        exemption to the D.C. Human Rights Act. .................................. 27

                iii.    Plaintiff's argument related to the 100% conviction rate
                        argument is misguided. ............................................................... 27

IV.     Plaintiff Cannot State a Claim for  Negligence Because His Claim Arises Entirely
        from an alleged Contractual Relationship...................................................................... 29

**CONCLUSION** ................................................................................................................ **31**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) .......................................................................21

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .............................................................................23

*Amin v. Nyack Sch. of Adult & Distance Educ.*, 710 F. Supp. 2d 80 (D.D.C. 2010) ...................30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................6, 18

*Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214 (D. Or. 2016) ..........................................16, 21, 22

*Bain v. Howard Univ.*, 968 F. Supp. 2d 294 (D.D.C. 2013) ......................................................14

*Barrett v. W. Chester Univ. of Penn. of State Sys. of Higher Educ.*, No. 03-4978,
     2003 WL 22803477 (E.D. Pa. Nov. 12, 2003) ......................................................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) .....................................................................18

*Billups v. Lab Corp. of Am.*, 233 F. Supp. 3d 20 (D.D.C. 2017) ................................................13

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, No. 13-00871, 2015
     WL 13159050 (D.D.C. July 6, 2015) ...................................................................................14

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) ....................................................................23

*Chenari v. George Washington Univ.*, 847 F.3d 740 (D.C. Cir. 2017) .......................................14

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321 (D.C. Cir. 2014) ...................26

*Doe v. Belmont Univ.*, -- F. Supp. 3d --, 2018 WL 4627033 (M.D. Tenn. Sept. 27,
     2018) ......................................................................................................................................8

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016) ............................................................15

*Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875 (N.D. Oh. 2017) ............................................8, 20

*Doe v. Cummins*, 662 Fed. Appx. 437 (6th Cir. 2016) ..........................................................16, 18

*Doe v. George Washington Univ.*, 305 F. Supp. 3d 126 (D.D.C. 2018) .......................................17

*Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d 1288 (S.D. Fla. 2016) .................................................18

*Doe v. Purdue Univ.*, 281 F. Supp. 3d 754 (N.D. Ind. 2017) .....................................................18

*Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712 (E.D. Va.
     2015) .....................................................................................................................................16

*Doe v. Regents of the Univ. of Cal.*, No. 15-02478, 2016 WL 5515711 (C.D. Cal. July 25, 2016)..................................................................................................17, 18

*Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748 (D. Md. 2015)........................................17

*Doe v. The Tr. Of the Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Pa. 2017)......................8

*Doe v. Univ. of Cincinnati*, No. 16-987, 2018 WL 1521631 (S.D. Ohio Mar. 28, 2018) .............................................................................................................................20

*Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064 (D. Colo. 2017)....................................................................18

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009).........................16, 21

*Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984 (D. Minn. 2017)..............................18

*Doe v. W. New England Univ.*, 228 F. Supp. 3d 154 (D. Mass. 2017).........................16

*Duke v. N. Texas State Univ.*, 469 F.2d 829 (5th Cir. 1972) .......................................11

*E.L. ex rel. Bachman v. Penn Harris Madison Sch. Sys.*, No. 05-717, 2006 WL 2512077 (N.D. Ind. Aug. 28, 2006)........................................................................23

*Friends Christian High Sch. v. Geneva Fin. Consultants*, 39 F. Supp. 3d 58 (D.D.C. 2014) ...........................................................................................................29

*Gorman v. Univ. of Rhode Island*, 837 F.2d 7 (1st Cir. 1988).....................................11

*Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90 (D.D.C. 2014)......................14, 15

*Hardin v. Dadlani*, 221 F. Supp. 3d 87 (D.D.C. 2016)................................................10

*Himmelstein v. Comcast of the Dist. LLC*, 908 F. Supp. 2d 49 (D.D.C. 2012) ............................30

*Holloway v. Howard Univ.*, 206 F. Supp. 3d 446 (D.D.C. 2016)..................................16

*In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46 (D.D.C. 2016) ........................6

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).........................25, 26, 27

*Jackson v. Birmingham Board of Educ.*, 544 U.S. 167 (2005)....................................23

*Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986) ........................................................................15

*Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172 (D.D.C. 2016) ..................14

*Langevine v. D.C.*, 106 F.3d 1018 (D.C. Cir. 1997)....................................................10

*Mallory v. Ohio Univ.*, 76 F. App'x 634 (6th Cir. 2003) ................................................. 22

*Malloy v. Washington Metro. Area Transit Auth.*, 187 F. Supp. 3d 34 (D.D.C. 2016), *aff'd*, No. 16-7092, 2017 WL 672123 (D.C. Cir. Jan. 31, 2017) ................................... 7

*Mills v. Hayden*, 284 F. Supp. 3d 14 (D.D.C. 2018) ........................................................ 5

*Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98 (D.D.C. 2016) .................................. 31

*Nash v. Auburn Univ.*, 812 F.2d 655 (11th Cir. 1987) .................................................... 15

*Nugent v. Unum Life Ins. Co. of Amer.*, 752 F. Supp. 2d 46 (D.D.C. 2010) ................................. 31

*Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609 (E.D. Pa. Sept. 30, 2011), *aff'd sub nom.* 518 F. App'x 86 (3d Cir. 2013) ................................................................................................... 11

*Powell v. Saint Joseph's Univ.*, 2018 WL 994478 (E.D. Pa. Feb. 20, 2018) ................................. 8

*Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219 (D. Conn. 2006) .................................... 25

*Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325 (M.D. Ga. 2007) ....................................... 22

*Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289 (D.N.M. 2017) ................................................................................................... 18, 20

*Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio 2015) ...................................... 16

*Students v. United States Dep't of Educ.*, No. 16-4945, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom.* No. 16-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017) ................................................ 24

*Tafuto v. N.J. Inst. of Tech.*, Civ. A. No. 10-4521 (PGS), 2011 WL 3163240 (D.N.J. July 26, 2011) ................................................................................. 21, 22

*Valente v. Univ. of Dayton*, 438 Fed. Appx. 381 (6th Cir. 2011) ................................. 30

*Weser v. Glen*, 190 F. Supp. 2d 384 (E.D.N.Y. 2002), *aff'd,* 41 Fed. Appx. 521 (2d Cir. 2002) ........................................................................................... 23

*Whole Foods Mkt. Grp., Inc. v. Wical Ltd. P'ship*, 288 F. Supp. 3d 176 (D.D.C. 2018) ................................................................................................... 13, 14

*WMATA v. Quik Serve Foods, Inc.*, No. 04-687, 2006 WL 1147933 (D.D.C. Apr. 28, 2006) ................................................................................................. 13

*Xereas v. Heiss*, 933 F. Supp. 2d 1 (D.D.C. 2013) ........................................................ 13

*Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y. 2015) .......................... 23

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994) ................................................................17, 18

*Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-02709, 2016 WL 10807692 (N.D. Cal. Sept. 27, 2016) ................................................................24

### STATE CASES

*Benefits Commc'n Corp. v. Klieforth*, 642 A.2d 1299 (D.C. 1994) ................................24

*Choharis v. State Farm Fire & Cas. Co.,* 961 A.2d 1080 (D.C. 2008) ........................30

*EDCare Mgmt., Inc. v. DeLisi,* 50 A.3d 448 (D.C. 2012) ............................30

*Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878 (D.C. 2008) ....................24

*In re M.A.C.*, 761 A.2d 32 (D.C. 2000) ................................10

*Television Capital Corp. of Mobile v. Paxson Commc'ns Corp.,* 894 A.2d 461 (D.C. 2006) ................................13

### FEDERAL STATUTES

66 Fed. Reg. 5512 ................................24

20 U.S.C. § 1681(a) ................................16

Federal Rule of Civil Procedure 8(b) ................................5

Federal Rule of Civil Procedure 12(b)(6) ................................6

U.S. Const. Article VI, cl. 2 ................................26

### STATE STATUTES

D.C. Human Rights Act § 2-1401.03 ................................27, 28

D.C. Human Rights Act § 2-1402.41 ................................23, 24, 26

D.C. Human Rights Act § 2-1402.68 ................................26

### OTHER AUTHORITIES

Office for Civil Rights, Dear Colleague Letter on Sexual Harassment (Jan. 25, 2006), *available at* https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html ................................24

Office for Civil Rights, Q&A on Campus Sexual Misconduct (Sept. 2017), *available at* https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct ................................24

## INTRODUCTION

Plaintiff John Doe ("plaintiff") was suspended for one year from The George Washington University (the "university") after he was found responsible for a violation of the university's Code of Student Conduct (the "Code") prohibition on sexual misconduct.

The student who reported plaintiff's conduct, Jane Roe, is not before the Court in this civil action and is referred to anonymously in the Amended Complaint. The underlying dispute in this case, though, was of course not between the university and John Doe, but between plaintiff and Jane Roe. The university's job was to act as a neutral arbiter, to follow its policies and procedures, and to decide whether Jane Roe's accusation of sexual assault was more credible than plaintiff's denial. That the university did so – that it found Jane Roe more credible – is not evidence of animus or bad faith. It is instead much more simply what must happen when a neutral arbiter – not unlike this Court – is tasked, and obligated, to determine the rights of two parties whom it must assume both proceed in good faith: the factfinder must, in the end, choose a side. This lawsuit arises for the simple and sole reason that plaintiff believes the university should have believed him, not Roe.

The following facts are not in dispute: A sexual assault complaint was lodged against plaintiff, and the university had an obligation to investigate and adjudicate it. The university did investigate the complaint, and held a hearing at which three panel members heard testimony from plaintiff, Roe, and several witnesses. The hearing panel decided by a preponderance of the evidence that plaintiff had sex with Roe while she was incapacitated and unable to consent. An appeal officer held that Doe had not submitted a viable appeal, thus affirming the finding. Plaintiff was disciplined with a one-year suspension from the university.

Plaintiff filed a preliminary injunction alleging not only that the university hearing panel and appellate officer were incorrect, but also that their conclusions were so wrong as to be in violation of a number of federal and state laws and would cause him irreparable harm. The Court denied plaintiff's motion for preliminary injunction, and in doing so held that plaintiff was unlikely to succeed on the merits of all but one of his causes of actions, the same counts he brings over six months later in his Amended Complaint.

The sole cause of action that the Court found that was likely to succeed on the merits was breach of contract based on the university's handling of Doe's appeal. Plaintiff won partial summary judgment on his claim that the university breached its contract with plaintiff by failing, in this Court's judgment, to properly review plaintiff's appeal.

As a remedy, the Court ordered that the university form an appellate panel to review the finding of the original hearing board. The Court clearly defined the rights plaintiff was entitled to under the Code, and gave the university specific instructions to follow in considering the appeal. The Court directed the appellate panel to consider two sets of phone records, which materialized long after the original hearing and were not included in the original appeal, in addition to the two pieces of evidence that plaintiff raised for the first time in his original appeal. The university complied in full with the Court's order. On September 18, 2018, the university informed plaintiff that the appellate panel considered all evidence, followed the procedure prescribed by this Court, and affirmed the finding of the hearing panel.

Despite arguing that all he was seeking was a fair shake at an appeal, plaintiff remains unwilling to accept the findings of the original university hearing panel, the original appellate officer, or the newly convened appellate panel, and has renewed all is claims. But having thus asked for and received a second consideration of his appeal, plaintiff confirms that his theory

was never rooted in procedure.  Instead, plaintiff simply does not agree with the university's findings, now made and affirmed at multiple levels, that he is responsible for the conduct another student accused him of engaging in.  The university and the Court cannot compel plaintiff to admit fault, but at some point the process needs to end.

Plaintiff's Amended Complaint lacks any well-pleaded allegation of gender bias, un-addressed procedural error, or any other breach of duty, so plaintiff resorts instead to superlatives, conclusions of law, and bold-faced type.  However, in light of the university appellate panel's findings, the same conclusions this Court reached on the motion for preliminary injunction are warranted: plaintiff's allegations do not state a plausible claim upon which relief can be granted, and his Amended Complaint must be dismissed, this time with prejudice.

## RELEVANT FACTUAL BACKGROUND

Having already denied a motion for preliminary injunction and granted a motion for partial summary judgment in this civil action, the Court is familiar with the alleged facts that bear on this motion.  Notwithstanding the more than three-hundred and fifty paragraphs of plaintiff's complaint, the relevant facts, accepted as true at this stage of the proceedings, are relatively few: On September 12, 2015, plaintiff and Roe, both of whom were university students, had sex in plaintiff's dorm room.  (Am. Compl. at ¶ 6).  Two years later, Roe filed a complaint with the university and contended that the encounter was not consensual because: (a) her intoxication level that night rendered her unable to consent, and (b) she had clearly indicated to plaintiff that she did not consent.  (*Id.* at ¶ 7).  Plaintiff disputed Roe's account.

The university conducted an investigation that culminated in a hearing at which a three-member hearing board was tasked with determining whether plaintiff had violated university policy.  Roe called three student witnesses – J.E., R.M., and E.E. – each of whom testified that

Roe had been inebriated the evening of the alleged assault. (*Id.* at ¶¶ 145-148). Roe likewise testified at the hearing that she had been intoxicated and unable to consent. (*Id.* at ¶ 135). Plaintiff testified at the hearing that Roe had provided enthusiastic consent during their sexual encounter. (*Id.* at ¶ 165). Plaintiff called no additional witnesses. (*Id.* at ¶ 166).

Faced with conflicting testimony from the witnesses at the hearing, the hearing board was nevertheless required to resolve whose version of events was more credible based on the information presented to them. The board found plaintiff responsible for sexual misconduct. (*Id.* at ¶ 167). It suspended plaintiff for one year, delaying his graduation from May 2018, when plaintiff had expected to graduate, to January 2019. (*Id.* at ¶ 1). That sanction was affirmed when the university's appellate officer concluded that plaintiff had not submitted a viable appeal. (*Id.* at ¶ 181).

Plaintiff filed this lawsuit, coupled with a motion for preliminary injunction, in March of 2018. Plaintiff subpoenaed the phone records of E.E., one of Roe's witnesses in front of the hearing board, (*id.* at ¶ 106), and the university acquired Roe's phone records and added them to the record as well. (*Id.* at ¶ 107). Despite the great amount of ink spilled by the parties debating the merit, and meaning, of the phone records, the Court denied plaintiff's request of preliminary injunction, emphasized the lack of relevance of the phone records, and ruled narrowly that plaintiff had demonstrated a likelihood of success on the merits on a narrow breach of contract claim related to the manner in which his appeal was rejected. (Doc. No. 25).

Plaintiff moved for partial summary judgment on his breach of contract claim, arguing that the appellate officer did not consider his appeal according to the procedure required by the university's policy. (Am. Compl. at ¶ 185). The Court granted the motion and ordered the university to convene an appellate panel to hear plaintiff's original appeal as supplemented

consistent with the Court's order.   (*Id.*).   The university appellate panel convened, and considered plaintiff's appeal in accordance with the Court's Order.  (*Id.* at ¶ 216).  The appellate panel considered each ground raised by plaintiff and found insufficient grounds to remand the decision back to a hearing panel.   (*Id.* at ¶ 217); *see also* Declaration of Joshua W. B. Richards ("Richards Decl.") at <u>Exhibit C</u>.[1]

Despite having now received the precise thing plaintiff had contended was necessary to resolve his breach of contract claim – full consideration of his appeal on the merits – plaintiff filed the instant Amended Complaint.   In it, plaintiff provides extensive detail about the university's proceedings.  The hundreds of paragraphs set forth in the complaint were clearly not included to satisfy Rule 8's "short and plain statement."  Instead, plaintiff scarcely attempts to conceal that what he wants is a do-over – he wants this Court to adjudicate the sexual assault allegations against him: to weigh the evidence, to find *him* more credible, to absolve him of responsibility, as the hearing panel did not.  But that is not the role of this Court.

More important, none of the do-over allegations set forth in the Amended Complaint conflict with the only important facts on this motion: (1) plaintiff was accused of sexual assault; (2) he denied the allegation; (3) testimony was heard by a university fact-finding panel from both sides, for and against; (4) the case ultimately rested on a determination of credibility as between plaintiff and Jane Roe; (5) the fact finders resolved that dispute in favor of Jane Roe; and (6) there are zero well-pleaded facts showing they did so motivated by gender.  No matter how many other selective, self-serving allegations plaintiff throws at this case, little beyond those six

---

[1]     Because plaintiff relies upon and references this the appeal outcome document in his Amended Complaint, the university attaches it to this motion; the court can consider it without converting this motion to one for summary judgment. *Mills v. Hayden*, 284 F. Supp. 3d 14, 17-18 (D.D.C. 2018) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.") (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1134 (D.C. Cir. 2015).

points matter, and they are not in dispute.  The Court must accordingly grant this motion and bring this process to a close.

## LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Pr. 8(a)(2).  When, within that short and plain statement, a plaintiff fails to assert facts sufficient to support his claims, a Court should dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(6).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 55 (D.D.C. 2016)  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A claim is not facially plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A complaint that tenders "'naked assertion[s]' devoid of 'further factual enhancement'" fails to meet the plausibility standard or provide grounds for relief.  *Id.* (alteration in original).  "The Court need not accept as true any legal conclusions disguised as factual allegations, 'naked assertions devoid of further factual development,' or a 'formulaic recitation of the elements of a cause of action.'"  *Malloy v. WMATA.*, 187 F. Supp. 3d 34, 42 (D.D.C. 2016), *aff'd*, No. 16-7092, 2017 WL 672123 (D.C. Cir. Jan. 31, 2017) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

## I.   BREACH OF CONTRACT[2]

### A.   Nothing Remains of Plaintiff's Breach of Contract Claim because the University Complied with its Duties to Plaintiff as Defined by the Court.

In adjudicating plaintiff's motion for preliminary injunction, the Court held that plaintiff's breach of contract claim, as it related to the way his appeal was rejected, was the only count on which plaintiff had a likelihood of success.  (Doc. No. 25, at 11).  Likewise, in granting plaintiff's motion for summary judgment, the Court held narrowly that the university did breach its contract with plaintiff by, and only by, the manner in which it handled his appeal.  The Court's Order prescribed a remedy by ordering the university to convene an appellate panel to consider plaintiff's appeal.  That the university complied with the Court's Order is demonstrated on the face of the Amended Complaint.  Plaintiff's real complaint is as clear as ever: he did not get the outcome he wanted, and so *ipso facto* something was wrong with the process.

In the Amended Complaint, plaintiff first alleges that the hearing board's original finding lacked credible support, ignored evidence, and was steered towards a preconceived conclusion. (Am. Compl. at ¶¶ 8-13).  But these are conclusions, not facts.  The facts are that the hearing panel heard evidence and resolved competing narratives, as was its charge.   Plaintiff's allegations cannot state a claim for breach of contract, as the Court implicitly held in disposing of the motion for preliminary injunction. (Doc. No. 25, at 10).

Plaintiff next argues that even after the Court ordered a panel to consider plaintiff's appeal on the merits, the university breached its contract. Without citing to *any* provision of the

---

[2]      On plaintiff's motion for partial summary judgment, plaintiff argued, and the Court ruled, that the Code constitutes a contract between plaintiff and the university for purposes of plaintiff's claims in this lawsuit.  (Doc. No. 41, at 9).  Inasmuch as this ruling is now the law of the case, the university will not present substantive argument to the contrary, but respectfully preserves here its argument that this ruling was error.

Code that the university violated, plaintiff asserts that the university breached its contract in its handling of the second appeal. He alleges that the university allowed Roe a chance to respond to Doe's appeal, (Am. Compl. at ¶ 189), that potential panelists (who did not serve on his appeal) demonstrated bias (*id.* at ¶¶ 199, 207), and that plaintiff was informed of all potential appeal panelists, but not which specific three of the group would be on *his* appeal panel (*id.* at ¶ 203). Plaintiff's failure to identify provisions of the Code that were violated by these alleged procedural issues is straightforward, and it is fatal.

So plaintiff argues, as he must, that his disagreement with the ultimate outcome, the fact that he would have decided differently, should be shared by the Court, and that such disagreement is enough to infer that the process was flawed. But plaintiff's argument in this regard is not novel, and courts around the country have consistently rejected similar refrains. *See e.g.*, *Doe v. Belmont Univ.*, -- F. Supp. 3d --, 2018 WL 4627033, at *7 (M.D. Tenn. Sept. 27, 2018) ("Doe is just dissatisfied with the *result* of the investigation. This is an insufficient basis for Doe's breach of contract claim.") (emphasis in original); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 891, 892 (N.D. Oh. 2017); *Powell v. Saint Joseph's Univ.*, 2018 WL 994478, at *5 (E.D. Pa. Feb. 20, 2018) (students are only entitled to the safeguards that schools explicitly provide in their procedures); *Doe v. The Tr. Of the Univ. of Pa.*, 270 F. Supp. 3d 799, 816 (E.D. Pa. 2017) (promise of a "thorough and fair investigation" did not constitute additional guarantee of rights). Because plaintiff has not met his burden to identify with specificity any specific contractual obligations the university had, but failed to perform, his claim fails.

### 1.    Procedures Set Forth in the Code and Policy.

The Code sets forth the basic procedures available to every student subject to any manner of discipline. *First*, the student receives written notice of a hearing and the charges against him. *Second*, at the hearing, a student may introduce relevant evidence and present witnesses. *Third*,

hearings will be recorded.  *Fourth*, a final decision will be made in a reasonable time period following the hearing.  ("Code," attached to Amended Complaint as Exhibit 2, and attached to the Richards Decl. as <u>Exhibit A</u>).

A similar procedure is set forth related to formal hearings under the university's Sexual Harassment and Sexual Violence Policy.  ("Policy," attached to Amended Complaint as Exhibit 1, and attached to the Richards Decl. as <u>Exhibit B</u>, which provides that "disciplinary proceedings will be commenced against that student according to the procedures outlines in the Code and in this Section . . . .").

**2.  Plaintiff received all review procedures set forth in the policy.**

Plaintiff does not contest that he was provided notice of a hearing, notice of the claims against him, the opportunity to present witnesses and evidence, an audio recording of the hearing, and a decision within a reasonable amount of time.  In other words, as outlined above (and setting aside the now-cured question of the appeal), plaintiff received exactly what the Code and Policy provide.  Plaintiff was provided the opportunity to participate in the full and fair review process that the procedures offer.  Although plaintiff disagrees with the findings of the hearing board, there can be no doubt from the voluminous allegations contained in the Amended Complaint detailing the hearing that he received the procedures set forth under the Code and the Policy.

> i.  *Plaintiff fails to show that the university violated its policies merely because the hearing panel weighed the credibility of the parties.*

Plaintiff contends that the university utilized the wrong burden of proof at his disciplinary hearing, which the Code states is a preponderance of the evidence.  (Am. Compl. at ¶ 314).  The thrust of this argument is that Roe's story, as retold by plaintiff, is "not credible."  This "because I say so" argument carries throughout plaintiff's papers.  The idea is that since plaintiff was not

believed, and he believes himself more credible than Roe, the university did not adhere to the proper standard of proof.

This determination, however, is not for the Court to make. Re-weighing issues of credibility is not part of the Court's charge, and plaintiff's allegations simply substitute his estimation of the witnesses' credibility for that of the hearing board. There was evidence, presented by Roe and her witnesses, that Roe was intoxicated to the point of incapacitation. There was evidence, presented by plaintiff, that she was not. The hearing board reviewed the evidence before it, and resolved that credibility determination against plaintiff. That is not the outcome plaintiff hoped for. But it is not a breach of contract.[3]

### ii. Plaintiff's arguments related to alleged bias are not persuasive.

"There is a presumption of fairness in [university] administrative proceedings which favors administrators and 'alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences.'" *Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609, at *11 (E.D. Pa. Sept. 30, 2011), *aff'd sub nom.* 518 F. App'x 86 (3d Cir. 2013); *see also Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988) (same); *Duke v. N. Texas State Univ.*, 469 F.2d 829, 834 (5th Cir. 1972) (same). This presumption is in accord with the deference that courts provide to the disciplinary schemes of

---

[3]       To the contrary, even in analogous situations in civil actions, credibility determines are left solely to the discretion of the finder of fact, which in this case was the hearing panel. *Accord Langevine v. D.C.*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("The court emphasized that a trial judge's disagreement with the jury on the credibility of witnesses does not justify the granting of a new trial."); *Hardin v. Dadlani*, 221 F. Supp. 3d 87, 97 (D.D.C. 2016) (stating that the jury, the finder of fact, is responsible for credibility determinations, while the Court may not substitute its judgment); *In re M.A.C.*, 761 A.2d 32, 42 (D.C. 2000) ("Inconsistencies in witness' statements present questions of credibility, and issues of credibility are committed to the sole and sound discretion of the fact finder.").

higher education institutions, including the specific manner that institutions administer proceedings.

Plaintiff argues that the hearing panel had a preconceived conclusion, but he bases this bald statement upon a single stray remark regarding the traumatic nature of the underlying events.  To that end, notwithstanding plaintiff's posturing, it is an uncontroversial notion that a set of hearings that necessarily involve either reliving a sexual assault or being forced to defend against a false accusation of sexual assault bring with them some emotional trauma for all involved.  To call a spade a spade, it is apparent now that the university's process could have been perfect, with no stray remarks taken out of context, no phone records, and administered by Solomon himself, and plaintiff would *still* contend it was unfair because the result was not what he wanted.  That much is clear in light of the Court's order on summary judgment, the appeal panel, and the Amended Complaint.  We can dispense with the fiction that plaintiff is seeking review of the "process" – it is the *outcome* that plaintiff is challenging here, but his complaints about the outcome cannot state a claim for breach of contract.

> iii.     *Plaintiff's allegations regarding the consideration of his appeal do not state a claim for breach of contract.*

In its memorandum opinion granting plaintiff's motion for partial summary judgment, the Court defined the what rights of appeal the Code guaranteed to plaintiff and instructed the university how to comply with the Code in doing the appeal.  (Doc. No. 42).  The university did precisely what this Court held that the policy required.  Plaintiff argues in conclusory fashion that "[t]he appeals panel's rationale for rejecting that evidence was frivolous and without basis and in violation of the Code."  (Am. Compl. at ¶ 331).  That argument is wrong, as is plain from the face of the notice of outcome of appeal, (Richards Decl. Ex. C), and by now strikes a familiar chord.  In similarly bland and conclusory fashion, plaintiff alleges that the university did not pick

a good appellate panel, and did not do as good a job training them as plaintiff would have liked, though he does not say how.  (*Id.* at ¶¶ 329, 330).  What plaintiff does not do is state how these assertions, even if true, would be a breach of the contract by pointing to provisions of the Code that were violated.

###### B.    Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiff's Amended Complaints fails to state a claim for breach of the implied covenant of good faith and fair dealing for three reasons.  *First*, District of Columbia law does not permit a cause of action for breach of the implied covenant of good faith and fair dealing where the allegations are indistinguishable from a duplicative breach of contract claim.  *Second*, plaintiff improperly attempts to use this claim to expand the rights that he was guaranteed by the Code, as defined by this Court in its August 14, 2018 Order granting plaintiff's Motion for Partial Summary Judgment.  (*See* Doc. No. 42).  *Finally*, plaintiff makes no plausible allegations that meet the arbitrary and capricious standard that applies.

###### 1.    Plaintiff's Good Faith and Fair Dealing Claim is Duplicative of his Purported Breach of Contract Claim.

Under D.C. law a "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action, such as a breach of contract claim." *WMATA v. Quik Serve Foods, Inc.*, No. 04-687, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006); *see also Xereas v. Heiss*, 933 F. Supp. 2d 1, 8 (D.D.C. 2013) (same).[4]  Because the requested remedies are identical and the claims duplicative, the breach of the covenant of good faith and fair dealing claim is improper and should be dismissed.

---

[4]    In *Jacobson v. Hofgard*, the Court reasoned that "[p]laintiffs are not required at the pleadings stage to choose between alternative remedies."  168 F. Supp. 3d 187, 208 (D.D.C. 2016).   There is no need to reconcile *Quik Serve* and *Xereas* with *Jacobson* on this motion, however, since the duplicative contract and good faith and fair dealing claims are not seeking

### 2.    An Implied Covenant of Good Faith and Fair Dealing Claim Cannot Expand the Express Terms of an Alleged Contract.

Plaintiff's cause of action is based on the false premise that he can invent implicit terms to the university's policies that provide him with greater rights than the express terms of the policies.  In its August 14 Order, the university identified precisely the rights that plaintiff was guaranteed by his contract with the university.  (*See* Doc. No. 42).   The theory that plaintiff is entitled to more than that directly contradicts the law and must be rejected.

"It is axiomatic that [t]he implied covenant of good faith and fair dealing cannot contradict, modify, negate, or override the express terms of a contract.'"  *Billups v. Lab Corp. of Am.,* 233 F. Supp. 3d 20, 26 (D.D.C. 2017) (quoting 17A C.J.S. Contracts §437 (2016)).  It is equally well-settled that the implied covenant cannot override express provisions of the contract.  *Television Capital Corp. of Mobile v. Paxson Commc'ns Corp.,* 894 A.2d 461, 468 (D.C. 2006).  The alleged express terms of the purported contract here are a set of procedures for student conduct matters.  As plaintiff makes no showing that the university departed from those procedures, as defined by the Court, his claim fails.

### 3.    The Arbitrary and Capricious Standard Requires A Showing of Bad Faith or Arbitrary Decision Making.

To succeed on a claim of breach of implied duty of good faith and fair dealing, the moving party must allege "either bad faith or conduct that is arbitrary and capricious."  *See Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 189 (D.D.C. 2016) (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)); *see also Chenari v. George Washington Univ.*, 847 F.3d 740, 745 (D.C. Cir. 2017); *Bain v. Howard Univ.*, 968 F. Supp. 2d 294, 299 (D.D.C.

---

alternative remedies.  *C.f. Whole Foods Mkt. Grp., Inc. v. Wical Ltd. P'ship*, 288 F. Supp. 3d 176, 187 (D.D.C. 2018) (allowing parallel claims to proceed because breach of contract claim sought injunctive relief and the breach of covenant of good faith and fair dealing claim sought damages).

2013) ("judicial review of academic decisions is limited to the question of whether they were made arbitrarily or in bad faith").

Such allegations may not simply parrot obligations already alleged to be imposed by express contractual terms. *See Whole Foods Mkt. Grp., Inc.*, 288 F. Supp. 3d at 187. In resolving these cases, "courts must not substitut[e] their judgments improperly for the academic judgment of the school." *Chenari*, 847 F.3d at 745. Student-plaintiffs must show evidence that a defendant-university was "motivated by bad faith or ill will toward them." *See Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, No. 13-00871, 2015 WL 13159050 *3 (D.D.C. July 6, 2015) (citing *Bain*, 968 F. Supp. 2d at 302). Merely showing some deviation from established procedure or "procedural irregularities" is not sufficient to prove that a student disciplinary decision was arbitrary and capricious. *Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 119 (D.D.C. 2014) ("the Court concludes that either there were no procedural irregularities here, or there were not the sort of procedural irregularities that would indicate an arbitrary decision.").

Courts have also applied this high standard to claims involving non-academic misconduct, such as the sexual misconduct claims against plaintiff. *See Hajjar-Nejad,* 37 F. Supp. 3d at 117 (refusing to apply lesser standard of review for medical student dismissal related to lack of professional comportment, as opposed to purely academic issues). Moreover, a student's "rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987); *see also Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 340 n.17 (D.R.I. 2016); *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245, 1250 (E.D. Mich.

1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986) ("While a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms.").

This theory is done away with swiftly in light of the fact that throughout the hearing process, Jane Roe and others consistently presented evidence from which a reasonable fact finder could conclude Jane Roe was unable to consent, and that plaintiff had sexually assaulted her. Whether plaintiff agrees or disagrees that the evidence presented by Jane Roe and her witnesses established by a preponderance that he was responsible for misconduct, the fact that she and others presented such evidence is enough to undermine any inference that the outcome was arbitrary.

In short, to state a claim plaintiff must allege more than that the university made a questionable decision, a bad decision, or even the wrong decision. Plaintiff must instead show that the decision against him was made with nefarious intent or that it was so unreasonable and unsupported as to prove arbitrary. As discussed in the previous section, it is plain from the face of the pleadings that this is not the case. Plaintiff's conclusory arguments to the contrary are not sufficient to state a claim and must be dismissed.

## II.   <u>PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE IX</u>

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity" that receives federal funding. 20 U.S.C. §1681(a). The D.C. Circuit has not precisely articulated the elements of a Title IX claim in the context of a student disciplinary matter, but courts throughout the country, including in this district, routinely dismiss Title IX claims at the pleading stage where, as here, a plaintiff has failed to plausibly plead discrimination on the basis of gender. *See, e.g.*, *Holloway v. Howard Univ.*, 206 F. Supp. 3d 446, 452 (D.D.C. 2016) (dismissing Title IX claim because "[m]issing from the complaint,

however, are any factual allegations to link the University's decision… to her gender."); *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 733 (E.D. Va. 2015); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 190 (D. Mass. 2017); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1226 (D. Or. 2016).

In so doing, courts have generally recognized that a cognizable Title IX claim arising from a disciplinary proceeding will fall within one of two categories: "erroneous outcome" based on gender, or "selective enforcement" based on gender. *See Doe v. Cummins*, 662 Fed. Appx. 437, 451-52 (6th Cir. 2016) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)); *see also W. New England Univ.*, F. Supp. 3d, at *187; *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 777-78 (S.D. Ohio 2015); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009). Plaintiff's allegations cannot support a claim under either theory.

## A.      Plaintiff Cannot State a Claim Based on an Erroneous Outcome Theory

As this Court noted in its Memorandum Opinion on plaintiff's preliminary injunction, to state a claim under that Title IX theory, a plaintiff must show:  (1) doubt about the accuracy of the disciplinary proceeding, and (2) that inaccuracy was motivated by intentional gender bias against the plaintiff. *Doe v. George Washington Univ.*, 305 F. Supp. 3d 126, 133 (D.D.C. 2018) (citing *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994)); *see also Doe v. Regents of the Univ. of Cal.*, No. 15-02478, 2016 WL 5515711, at *4 (C.D. Cal. July 25, 2016).  Assertions that fail to show a causal link between gender and a defendant's conduct are insufficient; a plaintiff must point to particular evidence that shows gender bias was the motivating factor. *See Yusuf*, 35 F.3d at 715. "Sufficiently particularized allegations of gender discrimination "might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision–making *that also tend to show the influence of gender*." *Doe v.*

*Salisbury Univ.*, 123 F. Supp. 3d 748, 766 (D. Md. 2015) (quoting *Yusuf*, 35 F.3d at 715) (emphasis added).  What will not suffice are bare legal conclusions or speculation.  *See id.*

So too the sort of stale and generalized allegations of "external pressure" that purport to stand in for "particularized evidence" in this case.  Plaintiff concludes that pressure from OCR to make guilty findings caused the university to presume his guilt.  (Am. Compl. at ¶ 14).  Plaintiff also contends that generic outside pressure caused the university to find him responsible.  (*Id.* at ¶ 15).  Finally, plaintiff cites to another case filed (and now dismissed) against the university by another plaintiff as a source of pressure for the university to maintain a guilty finding.  (*Id.* at ¶ 16).  Plaintiff alleges that the university thought that reversing the finding in this case would be used against them in the Raihan lawsuit.  (*Id.* at ¶ 59).  However none of these allegations are sufficient to substantiate the necessary causal connection.

With respect to the legal standard on an erroneous outcome claim, the Court need not make a determination as to whether plaintiff has raised a satisfactory specter of doubt (he has not) because even "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715.  Put simply, plaintiff's erroneous outcome claim fails because he has not alleged "sufficient *factual* matter permitting a plausible inference of gender bias" as required by *Iqbal* and *Twombly*." *Doe v. Regents of the Univ. of Cal.*, No. 15-cv-02478, 2016 WL 5515711, at *5 (C.D. Cal. July 25, 2016) (emphasis in original).  Instead, plaintiff offers only a decision he disagrees with and unsupported allegations that the decision must have been due to bias against males, simply on the basis that he is a male and he was found responsible.  *See Cummins* 662 F. App'x, at 453 (rejecting Title IX claim because the plaintiffs 'fail[ed] to show how these alleged procedural

17

deficiencies are connected to gender bias.  . . . these deficiencies at most show a disciplinary system that is biased in favor of alleged victims and against those accused of misconduct."). Plaintiff's conclusory allegations do not carry his burden.

### 1.    OCR Pressure

Plaintiff's allegations that the university felt OCR pressure to find male students guilty fails.  Courts around the country have repeatedly held that a generic allegation of "federal government pressure" is not a sufficient basis to allege an erroneous outcome based on gender bias, and that instead the government pressure must be directly connected to the underlying decision in the plaintiff's case.  *See*, *e.g.*, *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017); *Cummins*, 662 F. App'x at 448; *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 780 (N.D. Ind. 2017); *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1300 (D.N.M. 2017); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017); *Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d 1288, 1294 (S.D. Fla. 2016).  In *Cummins*, for instance, the court dismissed as "unfounded" and "conclusory" an allegation that "in order to appease the Department of Education, UC adopted a practice of investigation and enforcement under Title IX that is inherently biased against male students accused of sexual assault."  662 F. App'x at 452.

There is not a single allegation in plaintiff's complaint that forms a particularized nexus between *his* gender and the outcome of the disciplinary proceeding, nor between any OCR pressure and the outcome in *his* case.  Plaintiff alleges in conclusory fashion that the Department of Education's Office for Civil Rights is aggressively enforcing Title IX, but does not show how that affected the adjudication of his particular case.  Doe does not, and indeed cannot, allege such a nexus here.  While plaintiff heavily relies upon accusations that the panel felt that it had to uphold the finding because of OCR pressure, this cannot be true.  It is a matter of public record

that there is no open Title IX OCR investigations into the university,[5] nor does plaintiff plead that there are, or were, when the panel considered plaintiff's appeal. The investigation referenced in the Amended Complaint is *seven years old*. The appellate panel, to the extent they even had any knowledge of university interactions with OCR (plaintiff does not plead that they did), could not be influenced by an investigation that did not exist.

### 2. Generic pressure

Plaintiff next attempts to supports his erroneous outcome theory with general allegations of public pressure. He cites for this proposition such things as a lawsuit filed by another student against the university, (Am. Compl. at ¶ 50), "national media attention" (*id.*), and a change.org petition with "more than 2,000 signatures," (*id.* at ¶ 52). However, courts have consistently rejected this approach, holding that the allegations must be more than simply general pressure on the university. Plaintiff concludes, in boldface type, that the university's response to these public pressures "demonstrated a concrete link between public criticism of its Title IX enforcement regime and the results of individual Title IX cases." (*Id.* at ¶ 54). But saying it does not make it so, and an allegation that public pressure may have influenced some Title IX cases is not sufficient to allege a nexus for *this* case. Instead, a plaintiff must allege that the pressure the university is receiving is directly related to the particular matter in question. *See*, *e.g.*, *Doe v. Univ. of Cincinnati*, No. 16-987, 2018 WL 1521631, at *5 (S.D. Ohio Mar. 28, 2018) (dismissing a Title IX complaint and noting "[i]n the cases where public pressure was found to support claims of erroneous outcome, that public pressure targeted the *specific disciplinary action being challenged*") (emphasis added); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017) (dismissing a Title IX complaint where plaintiff alleged gender bias based on generalized allegations of outside pressure, including through the "Dear Colleague" letter); *Ruff v. Bd. of*

---

[5]     *See* https://www2.ed.gov/about/offices/list/ocr/docs/investigations/open-investigations/tix.html.

*Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017) ("Plaintiffs must allege some fact or facts demonstrating that outside pressure actually influenced UNM").  Here, plaintiff does not make a single allegation of the application of pressure on the university regarding this case, so his claim fails.

### 3.    Aniqa Raihan Lawsuit

Plaintiff next argues that a lawsuit in which Aniqa Raihan contended the university failed to take sufficient action against her accused harasser supports his claims of external pressure. (Compl. at ¶ 56). While plaintiff's consistent focus on the Raihan case has been misplaced and unpersuasive from the start, it is even more so now.  Judge McFadden of this Court granted the university's motion to dismiss the Raihan lawsuit on August 28, 2018, ruling that Ms. Raihan had failed to state a claim against the university, *before* the appellate panel considered plaintiff's appeal.  (*Id*. at ¶ 18).   Plaintiff is at pains to note that the dismissal is now on appeal, but the reality is that plaintiff does not and cannot assert that the hearing panel or appeals panel were aware of the *Raihan* case when they made their decisions.  And even if he could, a dismissed lawsuit by a different student relating to a different assault simply cannot do the work plaintiff ascribes to it – plaintiff does not and cannot plausibly allege that the panels that decided *his* case were influenced in any way by his gender.

### B.    Selective Enforcement

"To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the [educational institution]." *Tafuto v. N.J. Inst. of Tech.*, Civ. A. No. 10-4521 (PGS), 2011 WL 3163240, at *2 (D.N.J. July 26, 2011) (quoting *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003)).  "As such, a male plaintiff must allege that the [educational institution's] actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman

would not have been subjected to the same disciplinary proceedings." *Id.* (quoting *Univ. of the S.*, 687 F. Supp. at 757). Plaintiff alleges no similarly-situated female respondent who was treated differently than he, so he cannot state a claim for selective enforcement. *See Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 757 (E.D. Tenn. 2009); *Cf. Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) (Section 1981 claim of selective enforcement in student disciplinary process at private Hamilton College fails because no allegation that <u>similarly</u> <u>situated</u> students of a different race were treated differently).[6]

Absent a judicial insistence on particularized allegations of selective enforcement, "every conclusory selective-enforcement claim would lead to discovery concerning the entire disciplinary history of a college and then to a confusing, unmanageable and ultimately incoherent retrial of every disciplinary decision, including decisions not to investigate." *Albert*, 851 F.2d at 574; *see also Austin*, 205 F. Supp. 3d at 1226 (dismissing Title IX claim because "conclusory allegations of a pattern of enforcement against males alone does not give rise to an inference of sex discrimination"); *Tafuto*, 2011 WL 3163240, at *3 (dismissing Title IX selective enforcement claim where claim was based on nothing more than plaintiff's conclusion that institution's decision-making was driven by plaintiff's gender). Plaintiff's conclusory allegations, lacking any gender-based factual averments, cannot support a Title IX selective enforcement claim as a matter of law. *See Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1361-62 (M.D. Ga. 2007) (rejecting disparate impact claim for failure to allege discriminatory

---

[6]     Even if plaintiff had alleged that the University has not taken action against a female student for sexual misconduct, such allegation alone would not be sufficient to support his Title IX claim. "Simply because enforcement is asymmetrical does not mean that it is selectively so. It is a simple fact that the majority of accusers of sexual assault are female and the majority of the accused are male, therefore enforcement is likely to have a disparate impact on the sexes." *Austin*, 205 F. Supp. 3d at 1225.

intent); *Mallory*, 76 F. App'x at 640-41 (rejecting male student's selective enforcement claim for failure to show bias-motivated outcome).

## III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE D.C. HUMAN RIGHTS ACT.

### A.  Disparate Treatment

Plaintiff's disparate treatment claim under the D.C. Human Rights Act is premised upon the same arguments and allegations he advances for his claim under Title IX. Therefore, for the same reasons that plaintiff has failed to state a claim under Title IX, he has likewise failed on his disparate treatment claim under the D.C. Human Rights Act.

### B.  Disparate Impact

Plaintiff also alleges that the university's Title IX enforcement regime has a disparate impact on its male students.  (Am. Compl. at ¶ 299). Plaintiff bases this on the university's statement that its sexual misconduct policy has produced a 100% conviction rate over the last two academic years.  (*Id.* at ¶ 298).  These allegations lack merit. As explained above, at most what plaintiff alleges is that slightly more than half of cases in which a student was accused of sexual misconduct went to a hearing, and that cases that went to a hearing tended to result in a finding of misconduct.  This does not show anything approaching disparate impact discrimination.  More importantly, plaintiff asks this Court to expand the scope of the state-law Human Rights Act in a way that is not supported by the law.

### C.  This Court Should Not Recognize a Disparate Impact Claim Under Section 2-1402.41 of the D.C. Human Rights Act.

#### 1.  Title IX Does Not Permit a Disparate Impact Claim, and this Court Should Interpret the D.C. Human Rights Act in Accord.

Section 2-1402.41 of the D.C. Human Rights Act, which prohibits educational institutions from discriminating on the basis of sex, should be interpreted consistently with Title

IX, which likewise prohibits institutions from such discrimination on the basis of sex, to avoid a direct conflict with federal law. Title IX does not permit a disparate impact theory of liability. Instead, only intentional discrimination is actionable under Title IX. *See Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 & n.6 (S.D.N.Y. 2015).[7] Because Title IX prohibits a disparate impact claim under the federal statutory scheme, this Court should refuse to recognize such a claim under the D.C. statute.

The District of Columbia already "follow[s] cases construing Title VII in interpreting and applying the provisions of the DCHRA '*when appropriate.*'" *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) (emphasis added). The District has "also followed, when applicable, precedent from the federal courts involving claims under *other* civil rights statutes." *Benefits Commc'n Corp. v. Klieforth*, 642 A.2d 1299, 1302 (D.C. 1994) (emphasis added). Other states, such as California, construe their laws aimed at eradicating discrimination by educational institutions on the basis of sex or gender consistently with Title IX. *See*, *e.g.*, *Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-02709, 2016 WL 10807692,

---

[7]     The Supreme Court has held that "Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination." *Jackson v. Birmingham Board of Educ.*, 544 U.S. 167, 173 (2005) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690–93 (1979)). It has further noted that Title VI, on which Title IX was patterned, also "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Since Title IX is to be interpreted and applied in the same manner as Title VI, *see Cannon*, 441 U.S. at 696, it follows that Title IX also reaches only intentional discrimination. While the Supreme Court has found that regulations implementing Title VI may reach activities that have a disparate impact, it has also held that there is no private right of action to enforce such regulations. *See Alexander*, 532 U.S. at 281, 293. Accordingly, numerous courts have dismissed private actions to enforce Title IX itself or regulations implementing Title IX when the allegations were based on disparate impact. *See*, *e.g.*, *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y. 2002), *aff'd*, 41 Fed. Appx. 521 (2d Cir. 2002) (dismissing Title IX disparate impact claims); *Barrett v. W. Chester Univ. of Penn. of State Sys. of Higher Educ.*, No. 03-4978, 2003 WL 22803477, at *11 (E.D. Pa. Nov. 12, 2003) (plaintiffs "cannot pursue a private right of action to enforce disparate impact regulations under [Title IX]"); *E.L. ex rel. Bachman v. Penn Harris Madison Sch. Sys.*, No. 05-717, 2006 WL 2512077, at *1 (N.D. Ind. Aug. 28, 2006) (rejecting Title IX disparate impact claim).

at *13 (N.D. Cal. Sept. 27, 2016).  This civil action and plaintiff's claim illustrate precisely why Section 2-1402.41 of the D.C. Human Rights Act also must be interpreted consistent with Title IX.

> **2.     If the Court Permits a Disparate Impact Claim Under the D.C. Human Rights Act, it will Create a Conflict with Federal Law.**

The federal government generally requires all schools, colleges, universities, and other educational institutions that receive federal funds to establish fair processes to adjudicate claims of sexual misconduct in accordance with the guidance documents issued by the Department of Education's Office for Civil Rights.[8]

The Department of Education "maintain[s] and advance[s] its interpretation[s] as binding on schools in the United States" and uses its guidance documents, including those cited above, to "guide DOE's review of complaints and pursuit of enforcement actions."  *Students v. United States Dep't of Educ.*, No. 16-4945, 2016 WL 6134121, at *11 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom.* No. 16-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017); *see also Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 226 n.8 (D. Conn. 2006) ("The OCR has set forth administrative guidelines for its own use in determining whether an educational institution has violated the rules set forth in Title IX.").  The Court need look no further than the Amended Complaint to illustrate this point.  As plaintiff recounts in his pleadings, "GW was one of the first universities targeted for investigation by the Education Department's Office for Civil Rights (OCR) in 2011," (Am. Compl. at ¶ 14), and that the

---

[8]     *See*, *e.g.*, Office for Civil Rights, *Revised Sexual Harassment Guidance* (66 Fed. Reg. 5512, Jan. 19, 2001), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf; Office for Civil Rights, Dear Colleague Letter on Sexual Harassment (Jan. 25, 2006), *available at* https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html; Office for Civil Rights, Q&A on Campus Sexual Misconduct (Sept. 2017), *available at* https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct.

university had come under active OCR investigation fewer than three months before Roe filed her complaint.  (*Id*. at ¶ 273).

It is important to recognize that in pressing his disparate impact claim, plaintiff cannot simultaneously maintain that the university's Sexual Harassment and Sexual Violence Policy or its Code are facially discriminatory.  To contend otherwise would be incompatible with the very essence of a disparate impact claim, which, by definition, applies only when policies or practices "that are facially neutral in their treatment of different groups . . . fall more harshly on one group than another."  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  In any event, it is clear that the Code and the Policy use gender-neutral terminology and thus plainly do not discriminate against one sex or another on their face.

According to plaintiff, however, if the outcome of the neutral processes established by the university pursuant to Title IX is that only men are found responsible for sexual misconduct, then the processes have a disparate impact on men and violate the D.C. Human Rights Act's "Effects Clause," which attempts to establish disparate impact liability for "[a]ny practice which has the effect or consequence of violating any of the provisions of" the Act.  *See* D.C. Code §2-1402.68.

In other words, under plaintiff's theory, the university cannot comply with federal law under Title IX by instituting a facially neutral review procedure for sexual misconduct claims without simultaneously subjecting itself to claims of disparate impact under the D.C. Human Rights Act.  If plaintiff is correct, and compliance with Title IX results in a disparate impact on men in violation of the D.C. Human Rights Act, then there is an unavoidable conflict of state and federal law.  In this conflict scenario, the state law must give way to the federal law under the Supremacy Clause of the United States Constitution.  *See* U.S. Const. art. VI, cl. 2; *see also*

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 326 (D.C. Cir. 2014) ("state laws are preempted when they conflict with federal law.").

This conflict can be avoided.  If Section 2-1402.41 of the D.C. Human Rights Act is construed consistently with Title IX, then the "Effects Clause" in Section 2-1402.68 of the Act does not apply to create disparate impact liability under Section 2-1402.41, and the state and federal laws will be in harmony and no conflict will arise.  This is the appropriate result.

### 3. Plaintiff Otherwise Cannot Allege Facts to State a Disparate Impact Claim.

#### i. *Plaintiff Confuses Purported Instances of Facial Discrimination with his Disparate Impact Claim.*

Even if plaintiff's disparate impact claim were legally cognizable, he does not allege facts sufficient to state such a claim.  As explained above, plaintiff cannot maintain that the Policy or the Code are facially discriminatory in advancing a disparate impact claim.  *See Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15.  But that is precisely what plaintiff is attempting to assert.

Plaintiff asserts what he says is *actual bias* in the university's Title IX enforcement regime.  According to plaintiff, the university's purported bias appears in two features of its "Title IX enforcement regime":  (1) the training the university provides to personnel responsible for administering the Policy on issues related to sexual harassment, including "how to conduct investigations and hearings in a manner that protects the safety of victims and promotes accountability" (Am. Compl. at ¶ 35, quoting the Policy, at 11), which plaintiff claims effectively teaches its judicial officers to view sexual misconduct complainants as victims before the actual hearing takes place; and (2) the university's employment of a Title IX investigator "who spent almost her entire professional career representing sexual assault claimants in court cases and university Title IX proceedings," and who brings a *bias* in favor of complainants into every case she investigates.  (Am. Compl. at ¶ 57).

These purported biases cannot form a foundation for a disparate impact claim because they are not "facially neutral" policies or practices that merely have the effect of "fall[ing] more harshly on one group than another." *See Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15.  Rather, these alleged biases, if accepted, amount to *intentional* forms of discrimination (which is also false as explained above).

> ii.  *The University is Exempt Under the Business Necessity Exemption to the D.C. Human Rights Act.*

Even if plaintiff could assert a viable disparate impact claim, that claim would also fail because the processes the university has established pursuant to Title IX are exempt under the business necessity exception in Section 2-1401.03 of the D.C. Human Rights Act.

The Act provides that "[a]ny practice which has a discriminatory effect . . . shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity."  D.C. Code §2-1401.03.  A respondent claiming the business necessity exception must be able to prove that "without such exception," the respondent's "business cannot be conducted."  *Id.*  The university easily qualifies for the business necessity exception here.  To conduct its business, the university must comply with federal law in the form of Title IX's binding guidance by maintaining its federally-mandated processes for adjudicating claims of sexual misconduct, as explained above.  Therefore, plaintiff cannot state a plausible disparate impact claim.

> iii.  *Plaintiff's Argument Related to the 100% Conviction Rate Argument is Misguided.*

Plaintiff's leading support for his disparate impact claim, that the university's system for the review of sexual misconduct claims led to a 100% conviction rate and, therefore, must be inherently biased, is not persuasive for a number of additions reasons.

*First*, plaintiff ignores confounding variables. The Policy, for example, includes two steps before an allegation gets to a formal hearing. Complainants are first offered a consultation with a university official. ( Policy at 8). Then, a complainant is also entitled to an administrative review level: "The allegations will receive an adequate, reliable, and impartial investigation and an effort will be made to resolve the complaint . . . ." (*Id.* at 9). These informal procedures attempt to first resolve complaints of sexual misconduct short of a hearing, and are often successful, including weeding out claims that are determined to be unsubstantiated. Only if the "administrative review procedure fails to resolve a complaint," does the issue go to a formal hearing. (*Id.*). The Policy also includes sanctions, including expulsion, for false claims of misconduct. (*Id.* at 11). Therefore, the Policy takes steps to prevent false accusations, and also includes two preliminary levels of review before any formal hearing takes place. The ultimate formal review hearing, and its resulting determinations upon which plaintiff relies, are only a small piece of the puzzle.

*Second*, although plaintiff exclaims that men do not commit 100% of sexual assaults, neither does plaintiff offer any evidence regarding in what numbers men are accused of sexual assault. The university cannot control which gender files a misconduct charge or against which gender the charge is lodged. Nor can it control whether a male or female ultimately requests a formal hearing. All that the university can do is provide the neutral framework for such complaints.

*Third*, although plaintiff casts the Policy as some sort of unique set of procedures separate from the Code designed to always convict the accused, this is simply not true. As explained above, the university is required to have a policy for sexual misconduct claims in order to satisfy Title IX guidance. However, both the Policy and the Code envision a similar, if not

identical, formal hearing procedure: if "Respondent [is charged] with violating the prohibitions pertaining to sexual harassment, including sexual violence, *disciplinary proceedings will be commenced against that student according to the procedures outlined in the Code* and in this Section of the Sexual Harassment and Sexual Violence Policy and Procedures."   (Policy at Appendix C, Sect. 1, ¶ 4).  Plaintiff has not pointed to a single substantive difference between the hearing procedures under the Policy or the Code.   Instead, he received the same full and fair formal review procedure contemplated by both such frameworks.

## IV.   PLAINTIFF CANNOT STATE A CLAIM FOR  NEGLIGENCE BECAUSE HIS CLAIM ARISES ENTIRELY FROM AN ALLEGED CONTRACTUAL RELATIONSHIP

In the District of Columbia, a tort claim "must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.  The tort must stand as a tort even if the contract relationship did not exist."  *Friends Christian High Sch. v. Geneva Fin. Consultants*, 39 F. Supp. 3d 58, 63 (D.D.C. 2014) (quoting *Choharis v. State Farm Fire & Cas. Co.,* 961 A.2d 1080, 1089 (D.C. 2008)); *see also Amin v. Nyack Sch. of Adult & Distance Educ.*, 710 F. Supp. 2d 80, 83 (D.D.C. 2010) ("tort claims must exist in the absence of the contractual relationship."); *EDCare Mgmt., Inc. v. DeLisi,* 50 A.3d 448 (D.C. 2012). This court has concluded that a "negligence claim based solely on a breach of the duty to fulfill one's obligations under a contract . . . is duplicative and unsustainable."  *Himmelstein v. Comcast of the Dist. LLC*, 908 F. Supp. 2d 49, 55 (D.D.C. 2012). According to the allegations in the Amended Complaint, were there no contractual relationship, the university would have neither owed nor breached any duty to the plaintiff, and therefore the negligence action cannot succeed on the merits.

In *Choharis,* the plaintiff pursued negligent and fraudulent misrepresentation claims based on statements an insurance agent allegedly made to the insured regarding a claim.  The

District of Columbia Court of Appeals dismissed these claims because they clearly arose out a dispute over the terms of the insurance policy, a contract between the parties.  Similarly, the District of Columbia Court of Appeals dismissed the tort claims in *EDCare*, where the plaintiff, an administrative services agency, accused the defendant of making false statements that allegedly induced the plaintiff to forfeit its termination rights under the contract.  The Court held that the defendant "had no duty independent of the [contract] to make any representations" regarding the employer's finances or ability to make payments.  *EDCare*, 50 A.3d at 452.

Courts both in this jurisdiction and outside have applied the *Choharis* rule, which bars tort claims arising out of a contractual relationship, to dismiss tort claims by students against colleges and universities where the student is also asserting a contractual relationship with the university.  *See Amin*, 710 F. Supp. 2d at 83 ("Since all the torts [plaintiff] asserts arose from his contractual relationship with [the school], and do not exist independently of the contractual relationship, he cannot maintain an action in tort."); *compare Valente v. Univ. of Dayton*, 438 Fed. Appx. 381, 386 (6th Cir. 2011) ("Because… the relationship between a University and its students is contractual, and all of [plaintiff's] claims arise from the same course of events (namely, his suspension from UDSL for Honor Code violations), we could dispose of his tort claim summarily.").[9]

In this case, Doe's negligence claim would not exist but for the contractual relationship between the university and the plaintiff.  Doe alleges that "at all times relevant hereto, a

---

[9]     This Court has frequently applied *Choraris* to dismiss tort claims that arise from contractual relationships in other contexts.  *See e.g.*, *Nugent v. Unum Life Ins. Co. of Amer.*, 752 F. Supp. 2d 46, 55 (D.D.C. 2010) (dismissing IIED claim where the alleged injury was "inextricably linked with [defendant's] duty to perform its obligations under the contract"); *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 114 (D.D.C. 2016) (dismissing fraud claims because allegations " the fraud claim does not have an independent factual basis from the breach of contract claim and must be dismissed").

contractual relationship existed between the University and John Doe." (Am. Compl. at ¶ 304). Doe further alleges that the university breached that contract by failing to implement the contract provisions in the investigation of Roe's allegations, failing to provide him a fair investigation and failing to apply a proper application of standard to his investigation. Plaintiff then proceeds to allege that the individuals involved are unfit, biased, or inadequately trained. (*Id.* at ¶¶ 349-352). Each of Doe's allegations alleges that the university breached a duty that, if it owed Doe at all, was created entirely by his alleged contract with the university. This is demonstrated most clearly where he alleges that the "University has negligently trained and supervised the individuals it employs to investigate claims of sexual misconduct, adjudicate those claims, ***or otherwise implement the Policy and the Code.***" *Id.* at ¶ 348 (emphasis added). The allegations in Doe's negligence claim are inseparably linked with the contractual relationship that Doe alleges exists between himself and the university, and the negligence claim is entirely duplicative of his breach of contract claim. Indeed, his negligence claim alleges that the university was negligent for breaching the very same policies and procedures that are included in the student-university contract he alleges that he was part of with the university. Consequently, plaintiff fails to state a claim for negligence.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's claims against the university should be dismissed with prejudice for failure to state a claim.

**SAUL EWING ARNSTEIN & LEHR LLP**

Dated: <u>October 19, 2018</u>                    <u>/s/ *Joshua W. B. Richards*       </u>
                                                Joshua W. B. Richards, Esq.
                                                Centre Square West
                                                1500 Market Street, 38th Floor
                                                Philadelphia, PA 19102
                                                Joshua.Richards@saul.com

                                                Jason A. Ross, Esq.
                                                1919 Pennsylvania Avenue, N.W., Suite 550
                                                Washington, DC 20006
                                                Jason.Ross@saul.com

                                                *Counsel for Defendant*

32