# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, | : |
| *Plaintiff*, | : |
| v. | : Civil Action No. 1:18-CV-553-RMC |
| THE GEORGE WASHINGTON UNIVERSITY, | : |
| *Defendant*. | : |

## REPLY IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AMENDED COMPLAINT

Dated: November 9, 2018  /s/ *Joshua W. B. Richards*
Joshua W. B. Richards, Esq.
**SAUL EWING ARNSTEIN & LEHR LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Joshua.Richards@saul.com

Jason A. Ross, Esq.
**SAUL EWING ARNSTEIN & LEHR LLP**
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*

**INTRODUCTION**

As this case has progressed, it has become increasingly apparent that the parties are arguing past one another. Plaintiff believes that this case is about relitigating the merits of the complainant's allegations against him – about proving his innocence and convincing the court that what the hearing panel found happened on September 12, 2015 did not actually happen at all. The university, on the other hand, understands the law to require that it follow its published policies[1] and refrain from unlawful discrimination on the basis of sex. Those respective positions are not reconcilable, so one of the parties is right about the scope of the Court's review and one of the parties is wrong.

Because plaintiff's well-pleaded factual allegations with respect to sex-based discrimination and process are so thin, plaintiff has apparently calculated that he can keep his case alive if he can just convince the Court that he is not a rapist. Plaintiff goes all in on this argument, bookending his opposition with the opening assertion that since filing his complaint, his "innocence [has] become[] even clearer," and closing with a turn of phrase repeated from an earlier brief – that "at some point, the truth has to matter." Opp. at 1, 45. But the university respectfully disagrees that the Court's task in this case is to resolve the "truth" about Jane Roe's rape allegation. To the extent that it will, that resolution has already happened.

The private student conduct process at issue in this case took place in front of three university community members who sat face to face with Jane Roe and John Doe and listened to their stories. Those panel members heard the evidence as presented by Mr. Doe (assisted by counsel) and Ms. Roe. Indeed, much of this civil action so far has been about Mr. Doe seeking to add to the record in a way that he did not at the hearing. To plaintiff's point, though, the truth

---

[1] The university incorporates by reference here n.2 to its Memorandum of Law in Support of its Motion to Dismiss (Doc. No. 46).

*did* matter to those panel members. And after they considered all the facts presented by the parties within the bounds of the university's process, including Jane Roe's unequivocal allegation that she had not consented to sex, John Doe's denial of that fact, several witnesses' testimony about Jane Roe's intoxication, and all the witnesses' demeanors in presenting those facts, they believed Jane Roe. *Accord Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 990 (D. Minn. 2017) ("Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities.") (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648–49 (1999)).

Contrary to the implicit and explicit themes of plaintiff's opposition, this civil action's purpose is not to repeat a student conduct proceeding as a full dress trial – to bring in each of the witnesses to weigh their credibility, observe their body language, determine if they pause before answering or look up or shift. Those are the things that the hearing panel has already done. Yet again and again, plaintiff's opposition returns to that idea: plaintiff "does not seek a do-over [at GW] . . . what he seeks is a chance to vindicate himself in this Court, with the full array of evidence to which he is entitled." Opp. at 2.

Plaintiff is not entitled to misuse this Court's discovery authority to vindicate his personal desire to try to prove his accuser a liar through claims against the university, and he is particularly not entitled to do so where the facts alleged cannot support the legal theories he has asserted. Plaintiff has sought and been denied a preliminary injunction. He has sought and been awarded a new university appeal. That process has concluded, and plaintiff has received the process he was due. This case is not a matter for the federal courts, and it is time for it to end.

**ARGUMENT**

Mindful of this Court's instructions on the record at the preliminary injunction hearing, the university will reserve the lion's share of its rebuttal for oral argument – it does not waive such rebuttal not asserted here.  The university raises three issues in this Reply to assist the Court in clarifying the parties' positions prior to argument.  *First*, in contrast to the bravado of plaintiff's brief, his Title IX allegations are remarkably thin; he attempts to make up for that shortcoming with volume, but he fails.  *Second*, and relatedly, the cases plaintiff relies on from other courts of appeals are not binding, and even if they were, they are not persuasive because they too hold plaintiff to a pleading burden he has not satisfied.  *And third*, the university's motion and brief made quite clear that the university seeks dismissal of Count III in its entirety.

    **I.**    **Plaintiff still has not connected his generalized allegations of pressure to his own case, so his Title IX claim fails.**

To state a claim under an erroneous outcome theory, a plaintiff must assert facts supporting a conclusion that the outcome of a disciplinary proceeding was motivated by intentional gender bias against the plaintiff. *Doe v. George Washington Univ.*, 305 F. Supp. 3d 126, 133 (D.D.C. 2018) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994)).  "Sufficiently particularized allegations of gender discrimination 'might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 766 (D. Md. 2015) (quoting *Yusuf*, 35 F.3d at 715).

Plaintiff asserts that he "overwhelmingly states" a claim, but an "overwhelming" set of allegations would include gendered comments made by the disciplinary panel, gendered comments by university officials, and patterns of decision-making that showed that female students accused of sexual assault were treated differently than similarly accused males.

3

Plaintiff alleges no facts of these sorts, as he concedes. *See* Opp. at 23. Nor does plaintiff assert a single fact that connects the adjudication of his discipline to his gender. So plaintiff's allegations with respect to sex discrimination in his own case are certainly not overwhelming as to substance, though perhaps they are as to sheer volume.

The facts plaintiff asserts instead are the sort of generalized ones that could be cut and pasted into a complaint against nearly any college or university in the country: (1) Prior investigation by the Office of Civil Rights?[2] True of over 500 colleges and universities.[3] (2) Involvement in a Title IX litigation alleging gender discrimination? The case for dozens of schools for *active* cases; hundreds for resolved cases. (3) Students protesting over civil rights and the treatment of women on campus? It would be difficult to find a school where this was *not* happening. Plaintiff alleges "on information and belief" that students found responsible for other violations in other student conduct cases presided over by other panel members were male, but alleges nothing about how similarly-situated female students fared.[4]

---

[2] In the amended complaint plaintiff contends that an investigation against the university is pending. *See* Am. Compl. ¶ 58. That investigation was closed in July 2018 as a matter of public record, and was accordingly not pending when the appeals panel denied plaintiff's appeal following the Court's entry of partial summary judgment. *See* "Department of Education concludes probe into GW's handling of sexual misconduct cases," GW Hatchet, Aug. 6, 2018, *available at* https://www.gwhatchet.com/2018/08/06/department-of-education-concludes-probe-into-gws-handling-of-sexual-misconduct-cases/. Plaintiff has consented to correct this error through an amended pleading.

[3] *See* Chronicle of Higher Education, "Tracking Sexual Assault Investigations," *available at* https://projects.chronicle.com/titleix/ (accessed Nov. 7, 2018).

[4] Absent from plaintiff's complaint, and notably present in the *Doe v. Miami University* case relied upon by plaintiff on page 28 of his opposition, are particularized allegations that the university treats *similarly situated* women differently than men. Title IX is, after all, a statute that prohibits disparate treatment on the basis of sex. In *Miami*, the plaintiff "incorporated an affidavit from an attorney who represents many students in Miami University's disciplinary proceedings, which describes a pattern of the University **pursuing investigations concerning male students, but not female students**." *See* 882 F.3d 579, 593 (6th Cir. 2018) (emphasis added).

4

And yet, plaintiff's theory is that when taken all together, these sorts of allegations are enough to support a plausible claim that the university intentionally discriminated *against him* on the basis of his gender – *i.e.* that in his particular hearing, plaintiff was treated differently than a woman accused of the same things would have been. If plaintiff's formulation is correct, then there is no pleading standard to speak of at all – no gatekeeping function of Rule 12 in Title IX cases. There is instead merely a set of rote allegations pertaining to public pressure that are readymade for every case. But that is not what *Yusuf* says. It says "particularized allegations" of "intentional gender discrimination." 35 F.3d at 709, 715.

The authority outside this district and circuit cuts a wide swath in this area of the law, which continues to evolve and form new splits in authority. Plaintiff of course cites the cases setting the lowest bar. But many of the cases he cites, including the cases in the courts of appeals, make clear that he has *not* stated a claim. The better reasoned opinions, which this Court should both find persuasive and adopt, hold that the alleged pressure must be directly connected to bias in the plaintiff's own case because general pressure to investigate sexual assault says nothing about gender. *See, e.g.*, *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017); *see also* Def. Memo (Doc. No. 46) at 7 (collecting cases). Plaintiff contends in his brief the cases cited by the university do no stand for that proposition, but the language is plain:

> [P]ressure from the federal government to investigate sexual assault allegations more aggressively—either general pressure exerted by the Dear Colleague Letter or specific pressure exerted by an investigation directed at the University, or both—***says nothing*** about the University's alleged desire to find men responsible because they are men.

*Univ. of Colo.*, 255 F. Supp. 3d at 1078 (emphasis added); *see also Rossley v. Drake Univ.*, -- F. Supp. 3d. --, No. 4:16-cv-00623-RGE, 2018 WL 5307615 at *19 (S.D. Iowa, Oct. 12, 2018)

5

(collecting cases and observing that "courts have not found [the] argument persuasive" that generic Dear Colleague Letter and OCR pressure was sufficient to support erroneous outcome claim); *c.f. Haidak v. Univ. of Mass. at Amherst,* 299 F. Supp. 3d 242, 269 (D. Mass. 2018) (holding on summary judgment that plaintiff's erroneous outcome theory failed because "[e]ven if the Hearing Board erred, the record is entirely devoid of proof demonstrating that gender bias in any way drove the Board's mistake.")

Plaintiff has not stated a claim here for the simple reason that none of his allegations create any nexus with the hearing or outcome in **his** case – none of them demonstrate that the university community members who heard John Doe's and Jane Roe's testimony, along with several other witnesses' – would have found differently if Doe had been a woman. Getting through by merely alleging a generic set of conditions true at any college in the country and *then* trying to find something to connect it to his proceeding in discovery turns the standard on its head.

## II. *Doe v. Baum*, *Doe v. Miami University*, and *Doe v. Columbia* neither control nor are persuasive.

As noted above, the cases relied upon by plaintiff – *Doe v. Baum, Doe v. Miami University,* and *Doe v. Columbia* – are all readily distinguishable, and, in any event, not binding on this Court. In *Baum*, for instance, the Sixth Circuit explicitly held, as the university explained above, that "all of this external pressure alone is not enough to state a claim that the university acted with bias in this particular case. Rather, it provides a backdrop that, when combined with ***other circumstantial evidence of bias in Doe's specific proceeding***, gives rise to a plausible claim." 903 F.3d at 586 (emphasis added). The "evidence of bias in Doe's specific proceeding" in *Baum* was that the panel had credited exclusively <u>female</u> testimony, while discounting <u>male</u> testimony. *Id.* Whether that formulation is persuasive and correct as a legal matter is a question

that may be left for another day, since gender-based dichotomy is not present here, and plaintiff does not allege that it is. Nor was the determination in plaintiff's case made "on a cold record," as it was in *Baum*. *Id.* To the contrary, the credibility determination in Jane Roe's favor was made based on live testimony in the panel's presence. So not only does *Baum* do nothing to advance plaintiff's argument, it actually sets a standard that plaintiff cannot satisfy by requiring precisely the sort of proceeding-specific allegations that plaintiff has failed to make.

*Miami University* does not help plaintiff either. As noted in n.3, *supra*, in that case there were specific allegations, supported with affidavits and central to the Court's analysis, that the university treated similarly-situated women differently. *See* 882 F.3d at 593. Disparate treatment of similarly-situated students on the basis of sex may show that sex is a motivating factor in the outcome, so one can understand why *Miami* was decided as it was. Its holding has little to do with plaintiff's allegations here.

Finally, *Doe v. Columbia,* 831 F.3d 46 (2d Cir. 2016) is inapposite because it adopted a relaxed pleading standard for Title IX claims – a "temporary presumption" – that many courts have found irreconcilable with *Twombly* and *Iqbal*. The *Columbia* standard has not been adopted by the D.C. Circuit, and it has been explicitly rejected by numerous other courts since *Columbia* was decided. *See e.g. Doe v. Miami Univ.*, 882 F.3d at 589 (declining to follow *Columbia*); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 581 (E.D. Va. 2018) (declining to follow *Columbia* and predicting the Fourth Circuit would also so hold); *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214(D. Or. 2016) (declining to follow); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017) (citing *Austin* and declining to follow *Columbia*). To the extent that *Columbia* applied a lesser standard in considering whether a claim had been stated, it is inconsistent with Supreme Court precedent and not persuasive here.

But even without resolving courts' disagreement with *Columbia*, it does not help plaintiff either because even *Columbia* required that the plaintiff demonstrate facts about his own hearing – apart from the outcome – that showed gender bias. *See* 831 F.3d at 57.  There, the plaintiff alleged that the investigator "declined even to explore the testimony of Plaintiff's witnesses" in the ordinary course of the investigation. *Id.*  It merits some consideration that the *Columbia* court, in so finding, essentially collapsed the prongs of *Yusuf* – finding that the basis for the fact that the outcome was "erroneous" was *also* the reason it was plausibly discriminatory.  But that question need not be resolved here either because plaintiff in this case does not allege any comparable facts.  He does not contend that any witness he asked to have present at the hearing was excluded, or that the university declined to interview any witness he suggested.  He argues only that the university should have done things he never asked it to do and that the panel members should have found his story more credible.

Indeed, to read the complaint is to conclude that the investigation and hearing process themselves went precisely as laid out in the Code – plaintiff's first actual procedural gripe arises with the appeal, and that has been resolved and mooted.  At best plaintiff argues that the university should have gathered more evidence from the parties that *he himself did not ask for*, despite being represented by counsel.  Moreover, the university had no way of knowing whether the evidence gathered would benefit Roe or Doe.[5]  It is hard to understand how, having *not been asked by any party to do so*, and not knowing the content, not gathering phone records is plausible evidence of sex discrimination.  This does not meet even the erroneously-low standard

---

[5] As it turns out, the phone records tend to show that Doe was not truthful with the hearing panel about what transpired in the course of going to his apartment with Roe, though the university could not have known that at the time.

set by *Columbia*, and it certainly does not constitute "particularized evidence" of "intentional gender discrimination."

### III.   The university has moved to dismiss Count III in its entirety.

Plaintiff does not assert different counts in his complaint related to varying theories upon which he seeks relief for breach of contract.  The complaint instead sets forth a single count for breach of contract.  *See* Am. Compl. at Count III.  Notwithstanding the university's plain statements that (a) "Count III . . . fail[s] to allege terms of the alleged contract that were breached," Def. Mot. at 1 (Doc No. 46) ***and*** (b) because plaintiff has not identified "any specific contractual obligations the university had but failed to perform, his claim fails," plaintiff contends he was not fairly on notice that the university was moving to dismiss all grounds for breach of contract.  This is an argument almost too silly to address, but in an abundance of caution, the university clarifies explicitly here that it did move to dismiss Count III in its entirety.

The theories plaintiff raises – argument that the investigation was not "adequate, reliable, and impartial" – are patently insufficient to state a claim for breach of contract because they do not turn on a concrete and measurable contractual term – they turn on generalized terms that are defined by the specific terms that follow them.  *See, e.g.*, *Doe v. The Trustees of the Univ. of Pennsylvania.*, 270 F. Supp. 3d 799, 814 (E.D. Pa. 2017) ("the contractual promise to provide a 'fair and impartial' hearing cannot be interpreted without reference to the entirety of the hearing procedures set forth in the Disciplinary Procedures.").  Likewise, plaintiff's theory with respect to plaintiff's own disciplinary action filed against Jane Roe does not approach plausibility; like his complaints of sex discrimination, plaintiff merely describes an event he does not like as "retaliation."  He concedes that his report was investigated and an outcome was reached.  He does not allege any facts that support the conclusion that the university breached its policy when

it concluded that there was insufficient basis to determine that any evidence provided by Jane Roe was not "knowingly" false (particularly here, where the complaint demonstrates that Roe has maintained that she was heavily intoxicated on the night in question).

## CONCLUSION

If plaintiff's right to relief were "overwhelming," Opp. at 23, 27, "amply" demonstrated, *id.* at 24, and "plain," *id.* at 33, then he would not need a forty-five page brief to show it. Like his three-hundred-plus paragraph complaint and his purely generalized allegations of bias, volume cannot substitute for sufficiency. None of plaintiff's theories stray far from the core argument: the university reached an outcome plaintiff does not like, so he wants this Court to rehear, and adopt, his defense despite being provided precisely the process he was due. Plaintiff has not shown that the university breached any duty it owed him, and this civil action is not an appeal or a re-adjudication on the merits no matter how much plaintiff would like it to be.

In light of proceedings that have transpired already before the Court and plaintiff's multiple opportunities to plead, brief, and argue his claims, the Court should dismiss all of plaintiff's claims with prejudice.

SAUL EWING ARNSTEIN & LEHR LLP

Dated: November 9, 2018

/s/ *Joshua W. B. Richards*
Joshua W. B. Richards, Esq.
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Joshua.Richards@saul.com

Jason A. Ross, Esq.
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing **DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** was served today via the Court's ECF filing system upon:

Justin Dillon, Esq.
Christopher C. Muha, Esq.
KAISERDILLON PLLC
1401 K Street NW, Suite 600
Washington, DC 20005
jdillon@kaiserdillon.com
cmuha@kaiserdillon.com
*Attorneys for Plaintiff John Doe*

Dated: November 9, 2018

/s/ *Joshua W. B. Richards*
Joshua W. B. Richards, Esq. (D.C. Bar No. 1002821)
**SAUL EWING ARNSTEIN & LEHR LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Joshua.Richards@saul.com

Jason A. Ross, Esq. (D.C. Fed. Bar No. 1047909)
**SAUL EWING ARNSTEIN & LEHR LLP**
1919 Pennsylvania Avenue, N.W., Suite 550
Washington, DC 20006
Jason.Ross@saul.com

*Counsel for Defendant*